TRAVIS *v.* FUQUA.

[No. 18,105. Filed April 2, 1951. Rehearing denied
April 20, 1951. Transfer denied June 19, 1951.]

*Theodore Lockyear,* of Evansville, for appellant.

*Nat H. Youngblood, Herman L. McCray, J. William Davidson, Howard C. Sandusky* and *Ruth E. Maier,* all of Evansville, for appellee.

ROYSE, J.—On or about November 8, 1947, appellant purchased at the bus station of the Evansville & Ohio Valley Railway Company in Evansville, Indiana, a ticket for bus passage from Evansville to Bowling Green, Ky. She took passage by bus from Evansville to Owensboro, Ky. over the above named Company's bus and from Owensboro to Bowling Green over appellee's bus lines. She surrendered to each a part of the ticket she had purchased in Evansville. While a passenger on appellee's bus between the above mentioned points she sustained personal injuries. Subsequently she brought this action against appellee in the Vanderburgh Circuit Court. Alias summons was served on the President of the Evansville & Ohio Valley Railway Company. Appellee appeared specially and filed his verified plea in abatement in which he questioned the sufficiency of the service upon him in this State be-

cause he was a resident of Kentucky. After appellant's reply to this plea the cause was submitted to a jury which found for appellee. Judgment that appellant's action abate. This appeal followed.

There is no dispute in the facts. In addition to those set out above they may be summarized substantially as follows: Appellee, a resident of Kentucky, owned and operated Fuqua Bus Lines which made trips from Bowling Green, Kentucky to Owensboro, Kentucky. He owned no property in Indiana. He had no franchise or permit to operate busses in Indiana. He maintained no office in Indiana, had no agent in Indiana doing business for him, and had no employee in Indiana working in any office for him. He had an agreement or arrangement with the Evansville & Ohio Valley Railway Company whereby the Evansville Suburban & Newburgh Railway Company, ticket agent for Evansville & Ohio Valley Railway Company, could issue coupon tickets to passengers in Evansville wanting to go to points in Kentucky, routing passengers on the Evansville & Ohio Valley Railway bus from Evansville, Indiana, to Owensboro, Kentucky, and on the Fuqua Bus Lines from Owensboro, Kentucky, to points between Owensboro, Kentucky, and Bowling Green, Kentucky, for which the Evansville & Ohio Valley Railway Company received a commission of ten per cent of the purchase price of the ticket over the Fuqua Bus Lines; that the Evansville & Ohio Valley Railway Company had no authority to issue tickets to a passenger who wished to travel only between two points on the Fuqua Bus Lines; that it could issue a ticket for passage over Fuqua Bus Lines only if the passenger was going as far as Owensboro, Kentucky, on the Evansville & Ohio Valley Railway Company bus lines; that this arrangement of selling tickets on the connecting line was for

the accommodation of passengers so that they would not have to get off the bus and buy another ticket; that the Fuqua Bus Lines had the same sort of agreement or arrangement with other connecting bus lines, such as Southeastern Greyhound, Dixie Greyhound, Great Lakes Greyhound, and others; that the Evansville & Ohio Valley Railway Company has the same arrangement with Fuqua Bus Lines and many others for selling the Evansville & Ohio Railway Company coupon tickets for a ten per cent commission; that this arrangement or practice is used by bus companies all over the country; that the name of appellee did not appear on the coupon tickets issued at the Evansville office of Evansville & Ohio Valley Railway Company for passage from Evansville, Indiana, to Bowling Green, Kentucky; that the Evansville & Ohio Valley Railway Company did not designate on the ticket the bus line to be used from Owensboro, Kentucky, to Bowling Green, Kentucky; and that the passenger could use a line other than Fuqua Bus Lines in going to Bowling Green.

In the oral argument of this case both parties agreed the record presented a question of law to the trial court which should have been decided by it and not submitted to the jury. Appellant contends the record discloses service of process was had upon an agent of appellee in this state and that her cause of action grew out of that agency.

Section 2-703, Burns' 1946 Replacement, provides as follows:

"When a corporation, company or individual has an office or agency in any county for the transaction of business, any action growing out of, or connected with, the business of such office may be brought in the county where the office or agency is located, at the option of the plaintiff, as though

the principal resided therein; and service upon any agent or clerk employed in the office or agency shall be sufficient service upon the principal; or process may be sent to any county and served upon the principal."

Appellant contends the service of summons herein upon appellee was in strict accordance with the foregoing provision of the statute.

In the case of *Philadelphia & Reading Railway Company* v. *Robert J. McKibbin* (1917), 243 U. S. 264, 37 S. Ct. 280, 61 L. Ed. 710, McKibbin, a resident of New York, was injured in a New Jersey freight yard. He brought an action against the Railroad Company in the United States District Court for the Southern District of New York. The summons was served on the Company's President while he was passing through New York engaged exclusively on personal matters not connected with the Company's affairs. The District Court overruled the Company's motion to set aside the service of summons invoking the provisions of the Federal Constitution guaranteeing due process of law. The facts are stated in the opinion as follows:

"No part of the Philadelphia & Reading's railroad is situated within the state of New York. It has no dock, or freight or passenger ticket office or any other office or any agent or property therein. Like other railroads distant from New York, it sends into that state, over connecting carriers, loaded freight cars, shipped by other persons, which cars are, in course of time, returned. The carriage within that state is performed wholly by such connecting carriers, which receive that portion of the entire compensation paid by the shipper therefor; and the Philadelphia & Reading receives only that portion of the compensation payable for the haul over its own line. The Central Railroad of New Jersey is such a connecting carrier, and has a ferry terminal at the foot of West 23rd St., New York City. It issues there the customary

coupon tickets over its own and connecting lines, including the Philadelphia & Reading and the Baltimore & Ohio. The whole ticket, in each case, is issued by the Central Railroad of New Jersey; and each coupon so recites. In these tickets there is a separate coupon for the journey over each of the connecting railroads; and the coupon for the journey over each such railroad bears also its name. Each coupon is declared thereon to be 'void if detached.' The Philadelphia & Reading receives in ultimate accounting between the carriers, that portion of the fare which is paid for the journey over its own line. Passengers for points on the Philadelphia & Reading or on the Baltimore & Ohio, or beyond, may reach these railroads over the Central Railroad of New Jersey. At various places in and on this ferry terminal are signs bearing the name 'Philadelphia & Reading,' 'P. & R.,' or 'Reading,'— and also like signs of the 'Baltimore & Ohio,' or 'B. & O.' In the New York Telephone Directory there are inserted the words 'Phila. & Reading Ry., ft. W. 23d St. Chelsea 6550.' These signs on the terminal, this insertion in the telephone directory, and the information given in response to inquiries at the ticket office or over the telephone, are all designed to facilitate and encourage travel and for the convenience of the public. Neither the Philadelphia & Reading nor the Baltimore & Ohio has any office or any employee at the terminal. The Philadelphia & Reading did not direct the insertion of its name in the telephone book. Chelsea 6550 is the number of the trunk line of the Central Railroad of New Jersey; and that company pays the whole expense of the telephone service."

In reversing the District Court the Supreme Court of the United States, said:

"The defendant transacts no business there; nor is any business transacted there on its behalf, except in the sale of coupon tickets. Obviously the sale by a local carrier of through tickets does not involve a doing of business within the state by each of the connecting carriers. If it did, nearly every railroad company in the country would be

'doing business' in every state. Even hiring an office, the employment by a foreign railroad of a 'district freight and passenger agent . . . to solicit and procure passengers and freight to be transported over the defendant's line,' and having under his direction 'several clerks and various traveling passenger and freight agents,' was held not to constitute 'doing business within the state.' *Green* v. *Chicago, Burlington & Quincy Ry. Co.,* 205 U. S. 530 (51 L. Ed. 916, 27 S. Ct. 595)."

To the same effect see: *Stewart Fruit Co. of Baltimore City* v. *Chicago, M. & St. P. R. Co.* (1923), 143 Md. 56, 121 Atl. 837; *Hedge et al.* v. *Pennsylvania R. Co. et al.* (1926), 4 N. J. Misc. R. 315, 132 Atl. 492.

In the case of *Flexner* v. *Farson* (1919), 248 U. S. 289, 39 S. Ct. 97, 63 L. Ed. 250, the Supreme Court of the United States affirmed a decision of the Supreme Court of Illinois between the same parties (*Flexner* v. *Farson* (1915), 268 Ill. 435, 109 N. E. 327), which held a provision of the Kentucky Code analogous to § 2-703, Burns' 1946 Replacement, *supra,* as violating provisions of the Federal Constitution. The Supreme Court, speaking through Mr. Justice Holmes, said:

"It is argued that the pleas tacitly admit that Washington Flexner was agent of the firms at the time of the transaction sued upon in Kentucky, and the Kentucky statute is construed as purporting to make him agent to receive service in suits arising out of the business done in that state. On this construction it is said that the defendants, by doing business in the state, consented to be bound by the service prescribed. The analogy of suits against insurance companies based upon such service is invoked. *Mutual Reserve Fund Life Association* v. *Phelps,* 190 U. S. 147 (47 L. Ed 987, 23 S. Ct. 707). But the consent that is said to be implied in such cases is a mere fiction, founded upon the accepted doctrine that the states could exclude foreign corporations altogether, and therefore could establish this obligation as a condition

to letting them in. *Lafayette Ins. Co.* v. *French*, 18 How. 404 (15 L. Ed 451). *Pennsylvania Fire Ins. Co.* v. *Gold Issue Mining & Milling Co.*, 243 U. S. 93, 96 (61 L. Ed. 610, 616, 37 S. Ct. 344). The state had no power to exclude the defendants, and on that ground, without going farther, the supreme court of Illinois rightly held that the analogy failed, and that the Kentucky judgment was void. If the Kentucky statute purports to have the effect attributed to it, it cannot have that effect in the present case. *New York Life Ins. Co.* v. *Dunlevy*, 241 U. S. 518, 522, 523 (60 L. Ed. 1140, 1143, 36 S. Ct. 613)."

In the course of the cross-examination of appellee, he was asked the question: "The Evansville and Ohio Valley Railway Company was your agent to sell this ticket?" to which he made the following answer: "Yes, they were." Appellant contends that this was a judicial admission binding on appellee. We do not agree. It seems to us it is a judicial conclusion. But even if this be not true, the answer only admits the Evansville Company was its agent for the purpose of selling the ticket. Upon the authority of the foregoing cases we hold that was not the transaction of business contemplated by § 2-703, Burns' 1946 Replacement, *supra*. Furthermore, if it were, under the ruling of the Supreme Court of the United States in the Flexner case, *supra*, such service could not be good against the appellee (an individual) in this case.

Finally, appellant contends the case of *International Shoe Company* v. *State of Washington* (1945), 326 U. S. 310, 66 S. Ct. 154, 90 L. Ed. 95, 161 A. L. R. 1057, has changed the rule in the cases cited above. The facts in that case are entirely different than they are in the case herein. Only a portion of the facts set out in the opinion in that case are necessary to illustrate this difference.

"Appellant has no office in Washington and makes no contracts either for sale or purchase of merchandise there. It maintains no stock of merchandise in that state and makes there no deliveries of goods in intrastate commerce. During the years from 1937 to 1940, now in question, appellant employed eleven to thirteen salesmen under direct supervision and control of sales managers located in St. Louis. These salesmen resided in Washington; their principal activities were confined to that state; and they were compensated by commissions based upon the amount of their sales. The commissions for each year totaled more than $31,000. Appellant supplies its salesmen with a line of samples, each consisting of one shoe of a pair, which they display to prospective purchasers. On occasion they rent permanent sample rooms, for exhibiting samples, in business buildings, or rent rooms in hotels or business buildings temporarily for that purpose. The cost of such rentals is reimbursed by appellant."

The court then held *a foreign corporation* may be deemed present in a state, so as to make it constitutionally liable to be sued there, when the activities of the corporation in the state have not only been continuous and systematic but also give rise to the liability sued on, even though no consent to be sued or authorization to an agent to accept service of process has been given.

For the reasons herein stated, the judgment of the Posey Circuit Court is affirmed.

NOTE.—Reported in 97 N. E. 2d 867.