CHASSIS–TRAK, INC., Plaintiff,

v.

FEDERATED PURCHASER, INC., Defendant.

Civ. A. No. 812–58.

United States District Court
D. New Jersey.

Jan. 7, 1960.

McCarter & English, by Verling C. Enteman, Newark, N. J., for plaintiff.

Charles M. Grosman, Newark N. J., and Copal Mintz, New York City, for defendant.

WORTENDYKE, District Judge.

Plaintiff here, a corporation of Indiana, sues upon a judgment recovered by it against the defendant, a corporation of New York, on March 10, 1958, in the Marion County Circuit Court of Marion County, Indiana, for $11,592.15, and costs.

The defendant here has moved for summary judgment, pursuant to the provisions of F.R.Civ.P. 56, 28 U.S.C.A., upon the ground that the Indiana court lacked jurisdiction over defendant, and both parties have stipulated, in open court, upon the return of notice of that motion, that upon the pleadings, depositions and admissions on file, together with the affidavits and other documents submitted for the purposes of this motion, there exists no genuine issue as to any material fact.

At the outset it should be noted that although the complaint alleges that the defendant is a corporation of New Jersey, that allegation was denied in the answer, and the Court has been furnished with documentary evidence from which it appears that the defendant is a corporation organized and existing under the laws of the State of New York; its present name having been adopted, on February 4, 1932, being changed from that of Federated Purchasing Service

Corp. under which it was originally incorporated on May 3, 1928. The certificate of incorporation of Federated Purchasing Service Corp. provided that its principal place of business should be in the City of New York. On November 28, 1934 there was filed in the office of the Secretary of State of the State of New York, in behalf of the defendant, a certificate pursuant to Section 24 of the Stock Corporation Law of that State, designating the Secretary of State of New York as the agent upon whom process in any action against the corporation within that State might be served, and directing that a copy of any process so served be mailed to the defendant at 25 Park Place, New York City.[1] On November 5, 1954, Federated Purchaser, Inc. was duly authorized by the Secretary of State of New Jersey to transact business in New Jersey. This authorization to do business was still effective on the date upon which the pending motion was noticed.

In support of its present motion defendant contends that the Indiana judgment here sued upon is invalid for lack of jurisdiction in the Indiana Court over the defendant, because (1) the Indiana statute under which the purported service of process upon the defendant in the action there was not in accord with the due process requirement of the Fourteenth Amendment to the United States Constitution, and (2) there was a failure of compliance with the requirements of the Indiana statute, even assuming its constitutionality. The present motion has been duly argued; briefs having been submitted in behalf of the respective parties upon the questions presented thereby.

On April 24, 1957 defendant's manager of sales and purchases telephoned from defendant's New Jersey place of business at No. 1021 U. S. Route 22 in Mountainside, to plaintiff's representative in In-

1. On June 26, 1950 there was filed in the office of the Secretary of State of New Jersey, a certificate of incorporation of Federated Purchaser *Corp.*, which recites that the principal office of that corporation in that State is located at 114–116 Hudson Street, Newark, where process against the corporation may be served upon the agent of the corporation, one Phillip Barr.

dianapolis, Indiana, advising that defendant was in the market for 501 pairs of Chassis-Trak slides, Catalogue No. RLR 68 and inquiring respecting price and delivery dates therefor. The conversation resulted in an order which was confirmed by defendant's printed purchase order of the same date. This order form bore defendant's address and telephone number at 1021 U. S. Rte. 22, Mountainside, New Jersey, called for the merchandise discussed in the quantities and at the price orally agreed upon by telephone. The order expressly confirmed that telephone order, prescribed price and delivery terms, and bore the following directive: "If you issue statements or if you find it necessary to write us concerning a shipment which has been invoiced previously, such statements or correspondence should be addressed to our office at 1021 U. S. Route 22, Mountainside, New Jersey." This purchase order was acknowledged in writing by Chassis-Trak, Inc. upon its printed form dated April 26, 1957, forwarded and addressed to and received by Federated Purchaser, Inc. at the address directed by the latter's purchase order. Thus came into existence a contract between the parties which plaintiff proceeded to perform in Indiana, in accordance with its terms.

From time to time thereafter the respective representatives of the parties were in contact by mail and telephone concerning the merchandise which was the subject of the agreement, and these communications were at all times between the plaintiff's place of business in Indianapolis and the defendant's place of business in Montainside, New Jersey, and all shipping documents in connection therewith were so addressed.[2] After the plaintiff had completed its performance of the contract between the parties, plaintiff forwarded its bill to the defendant, at the Mountainside, New Jersey address, as directed in defendant's purchase order. Failing to receive payment thereof in due course, plaintiff, on July 8, 1957, sent its representative to defendant's place of business in Mountainside, New Jersey, where he met Mr. Kornhauser, the representative of defendant who had placed the order for slides, and made demand upon him for payment of the amount due under the contract, viz., $11,097.15. To this demand Kornhauser responded that defendant was prepared to pay the amount stated and that payment had been approved by defendant's appropriate department, but that because of vacations payment had been delayed. Kornhauser promised that a check for the amount due would be issued the week then next following. When the check was not received, follow-up telephone calls by plain-

2. Federated's catalogue for 1957 issued to the trade, recited on its face that it maintained six fully stocked warehouses, one in each of the following cities, viz.: New York, Newark, New Jersey, Mountainside, New Jersey, Los Angeles, Allentown, Pa. and Easton, Pa. The catalogue further informed the reader that the executive offices and main warehouse of the defendant were located at Mountainside, New Jersey on the main highway to Newark and New York, just ten minutes from the Newark airport, and that each branch of the defendant's business was a self-contained operation, including purchasing, warehousing and sales facilities. The catalogue further informed potential purchasers of defendant's merchandise that the latter's warehouses were inter-connected by telautograph and teletype, thus placing each of the six warehouses at the constant service of every customer. The partial decentralization effected by the maintenance of the six warehouses at the sites indicated was characterized in the language of the catalogue as "serving to accelerate the service of accounts." At the foot of the catalogue page, below the printed name of the defendant which followed the foregoing advices, are listed the respective addresses of these six warehouses, with the telephone number of each. In addition, stamped across the face of the catalogue page is the following legend: "Direct telephone tie-in to main office and warehouse at Mountainside, New Jersey from New York—Digby 9–3055 Newark—Market 3–9035." Nowhere upon either of the two catalogue pages or upon any of the other business documents of defendant submitted to the Court does the address of the principal office or the name of the registered agent, as set forth in the certificate of incorporation, appear.

tiff's employees to defendant's Mountainside, New Jersey place of business evoked successive reassurances of ultimate payment and explanations that delay was caused by vacations involving defendant's personnel. Finally, on September 13, 1957, Kornhauser informed plaintiff's representative by telephone that the matter of plaintiff's claim had been placed in the hands of defendant's attorney, who would determine whether and when payment should be made. After the transmission of this advice defendant's attorney, Copal Mintz, Esq. (who argued the pending motion here in its behalf) wrote to the plaintiff, under date of September 24, 1957, stating that because some of the merchandise purchased by the defendant from the plaintiff was used by the defendant in the performance of its contract with a third party, and because the third party had refused to pay the defendant therefor, payment of the plaintiff's claim by the defendant would be made promptly after and if the third party made its payment to the defendant.

Summons in the action in the Indiana court, which resulted in the judgment here sued upon, issued February 13, 1958 and was addressed to the Secretary of State of Indiana as the resident agent for Federated Purchaser, Incorporated, which is therein recited as "a foreign corporation not admitted to do business in Indiana, whose address is 1021 U. S. Rte. 22, Mountainside, New Jersey." It was served upon the Secretary of State of Indiana either on the 17th or the 18th of February, 1958, and was by him sent on February 19, 1958 with notice of the action, by United States registered mail, with return receipt requested, to the named defendant at the New Jersey address recited in the summons, directed defendant to appear and answer on or before March 7, 1958, and was admittedly received by defendant on February 21, 1958 at its Mountainside, New Jersey, address.

On February 25, 1958 Copal Mintz, as attorney for the defendant, wrote to the Secretary of State of Indiana, stating that the summons mailed to the defendant by the Secretary, issued out of the Indiana court in the case therein recited, had been turned over to the said attorney by the defendant, and inquired whether there was any record in the Secretary's office of his appointment as resident agent for the defendant. On the same date defendant's said attorney wrote to the attorney for the plaintiff in this Indiana action, advising him also that the summons had been turned over to him, and inquiring of said Indiana attorney "on what you base your right to attempt to effect service of process in the manner which you followed." Although defendant's attorney engaged in further correspondence with both the Indiana Secretary of State and with the attorney for the plaintiff in the Indiana action, no appearance was ever entered by or on behalf of the defendant in the Indiana suit. Counsel for the defendant admitted, during the course of the argument on the pending motion, that he intentionally allowed the Indiana case to proceed to judgment by default because he believed that the Indiana court had not obtained jurisdiction over the defendant.

Section 25–316 of the Indiana statute, pursuant to which the plaintiff undertook to issue and serve the summons in the Indiana action, provides as follows:

"The engaging in any transaction or the doing of any business in this state by any foreign corporation not licensed nor admitted to do business in this state under any existing act or any act hereafter enacted shall be deemed equivalent to an appointment by such foreign corporation of the secretary of state or his successor in office, to be the true and lawful authority and agent of such foreign corporation upon whom may be served all lawful processes, writs, notices, or orders in any action or proceeding against such foreign corporation arising or growing out of, directly or indirectly, any act or thing done by such corporation with-

in the state of Indiana. The engaging in any transaction or the doing of any business in this state * * under any existing act or any act hereafter enacted shall be significant of the agreement of such foreign corporation that any such process, writ, notice, or order against it, which is so served, shall be of the same legal force and effect as if served upon a designated resident agent of such foreign corporation."

It cannot be successfully disputed that the present defendant was a foreign corporation with respect to the State of Indiana, and that it was not licensed or admitted to do business in that State under any existing act of the legislature thereof. It is equally undisputed that said defendant became a party to a business transaction with a corporation of the State of Indiana, and that the cause of action asserted by the plaintiff against the defendant in the Indiana court arose or grew out of such business transaction. Therefore, if the Indiana statute, supra, is constitutional with respect to the circumstances surrounding the case in which the Indiana judgment was recovered, it would appear to control here. By the terms of the Indiana statute, defendant's participation in the transaction out of which the Indiana case arose must be deemed equivalent to an appointment of the Indiana Secretary of State as defendant's agent for the service of process, and, if process had been served in accordance with the statute, such service would be equivalent, in legal effect, to service upon an agent of the defendant resident in Indiana impliedly designated by the defendant for the purpose of receiving such service.

 The validity of the judgment sued upon in the present case depends, of course, upon whether the Indiana court had personal jurisdiction over the defendant. The State of Indiana was empowered to impose conditions not obstructive of interstate commerce or violative of constitutional due process, upon the transaction of business in the State by a foreign corporation which might see fit to refrain from maintaining or designating someone therein upon whom service of process might be made in state litigation which might be brought against the foreign corporation. By way of paraphrase, Indiana has statutorily said "We do not preclude foreign corporations from transacting business in our State without maintaining or designating someone in this State upon whom process may be served; but if they do exercise this right, they shall be deemed, by so doing, to have authorized our Secretary of State to receive service in their behalf." The Indiana statute further provides that service of any process against a foreign corporation under the circumstances stated shall be made by leaving a duplicate copy thereof with a fee of $1.00 with the Secretary of State, or in his office, and that such service shall be sufficient service upon the foreign corporation, *provided that a notice thereof and a copy are forthwith sent by registered mail with return receipt requested addressed to the foreign corporation "at the principal office of such foreign corporation designated in the articles of incorporation."* (Emphasis supplied.) It is obvious that, irrespective of the constitutional validity of the Indiana statute, there was a failure of compliance with one of its express requirements. Although the summons was duly served upon the Indiana Secretary of State, and defendant received timely notice of the institution of the suit in the form of a copy of the summons, the notice of such suit and the copy of the summons, although sent forthwith by registered mail with request for return receipt, were not "addressed to such foreign corporation at the principal office of such foreign corporation designated in the articles of incorporation" as required by the Indiana statute. Because of this non-compliance with the Indiana statutory requirement it might be deemed unnecessary to determine whether, in the event such compliance had been accomplished, the actuality of receipt of notice by the defendant rendered the procedure adopted equivalent to constitu-

786

tional due process.[3] But see Old Wayne
Mutual Life Association v. Flynn, 1903,
31 Ind.App. 473, 68 N.E. 327. Never-
theless, against the possibility that the
respect in which the Indiana statute was
not complied with might not be consid-
ered critical, we examine also the con-
stitutional question.

■■ "To obtain a valid judgment,
the party seeking it must (a) proceed in
a competent court; (b) give his opponent
reasonable notice of the litigation and
grant him a reasonable opportunity to be
heard; and (c) establish 'judicial juris-
diction' over the defendant involved.
* * * (J)udicial jurisdiction exists
whenever a state has sufficient contact
with a person to make the exercise of
jurisdiction reasonable, i. e., to make it
consistent with the requirements of due
process for the state to try in its courts
a particular case relating to that person."
L. D. Reeder Contractors v. Higgins In-
dustries, 9 Cir., 1959, 265 F.2d 768, 770–
771.

The modern criterion appropriate for
the determination of the constitutional-
ity of a state statute which purports to
subject to the jurisdiction of its courts
a foreign corporation not licensed to do
business nor maintaining an agent for
service of process in the state, is to be
found in International Shoe Co. v. State
of Washington, 1945, 326 U.S. 310, 66
S.Ct. 154, 157, 90 L.Ed. 95. The statute
considered in that case (Unemployment
Compensation Act, Wash.R.S. § 9998–
103(a) et seq.) required employers to
contribute to a State fund a specified
percentage of the wages payable annually
for his employees' services in the State.
The statute authorized service of an or-
der and notice of assessment of delin-
quent contributions by mailing the notice
by registered mail to an employer not
found within the State at his last known
address. The order of assessment was

made administratively reviewable by an
appeal tribunal whose decision was sub-
ject to ultimate judicial review in the
highest court of the State. International
Shoe Co. was a Delaware corporation,
having its principal office in St. Louis,
Missouri. It had no office in the State
of Washington, made no "contracts ei-
ther for sale or purchase of merchandise
there," maintained no stock of merchan-
dise in that State, and made no "deliv-
eries of goods in intrastate commerce."
The corporation did, however, employ
several Washington residents as sales-
men, whose principal activities were con-
fined to that State, and whose compensa-
tion was in the form of commissions
based upon the amount of their sales
therein. The activities of these sales-
men within the State were limited to ex-
hibition of samples and solicitation of
orders from prospective buyers of the
merchandise, at prices and on terms
fixed by International. Orders secured
were transmitted to the office in St. Louis
for acceptance or rejection. Accepted
orders were filled at and shipped f. o. b.
from points outside the State of Wash-
ington to purchasers within that State,
invoiced and paid for at the place of ship-
ment. No salesman was authorized ei-
ther to enter into contracts or to make
collections. The Supreme Court held
that the foregoing facts disclosed "pres-
ence" of the foreign corporation in the
State so as to render it constitutionally
amenable to the process criticized. In-
ternational's activities in Washington
were neither "irregular" nor "casual"
but were "continuous and systematic,"
resulting in "a large volume of interstate
business, in the course of which (the
foreign corporation) received the bene-
fits and protection of the laws of the
state * * *. The obligation * * *
sued upon arose out of those very activi-
ties." Such activities constituted, in the

3. A further Indiana statute, § 2–806 Burns'
 Ind.Stat.Anno. provides:
 "No summons, or the service thereof,
 shall be set aside, or adjudged insuffi-
 cient, where there is sufficient substance
 about either to inform the party on

whom it may be served that there is an
action instituted against him in court,
the name of the plaintiff and the court,
and the time when he is required to ap-
pear."

opinion of the Supreme Court, "sufficient contacts or ties with the state of the forum to make it reasonable and just according to our traditional conception of fair play and substantial justice to permit the state to enforce the obligations which appellant has incurred there." 326 U.S. at page 320, 66 S.Ct. at page 160. International Shoe, however, did not overrule Pennoyer v. Neff, 1877, 95 U.S. 714, 24 L.Ed. 565, or Minnesota Commercial Men's Association v. Benn, 1923, 261 U.S. 140, 43 S.Ct. 293, 67 L.Ed. 573; but, upon the cited authority of these two cases, reiterated with approval the principle that the due process clause of the Constitution "does not contemplate that a state may make binding a judgment in personam against an individual or corporate defendant with which the state has no contacts, ties, or relations." 326 U.S. at page 319, 66 S.Ct. at page 160.

In Flexner v. Farson, 1918, 248 U.S. 289, 39 S.Ct. 97, 63 L.Ed. 250, a statute of Kentucky, which purported to authorize substituted service of process in an action in personam against a non-resident defendant, was held unconstitutional. The issue of the validity of the service was initially raised by plaintiff's demurrer to the defendant's plea that the statute was unconstitutional. The action was brought in a court of Illinois upon a judgment rendered by a Kentucky court upon a cause of action alleged to have arisen out of a transaction which took place in Kentucky while the defendants, as partners, were conducting business in that State through Flexner, as their agent. 268 Ill. 435, 109 N.E. 327. Service of summons in the Kentucky action was made upon Flexner in accordance with a Kentucky statute purporting to authorize such service. Although Farson was actually served in the Illinois action upon the Kentucky judgment, he pleaded that the defendants in the Kentucky action were non-residents of that State, were not served with process, did not appear, and that Flexner was not their agent at the time of the service upon him (Flexner). The Supreme Court, in affirming the over-ruling of the plaintiff's demurrer in the Illinois trial court, speaking through Mr. Justice Holmes, had this to say, 248 U.S. at page 293, 39 S.Ct. at page 98:

"It is argued that the pleas (demurred to) tacitly admit that Washington Flexner was agent of the firms at the time of the transaction sued upon in Kentucky, and the Kentucky statute is construed as purporting to make him agent to receive service in suits arising out of the business done in that State. On this construction it is said that the defendants by doing business in the State consented to be bound by the service prescribed. * * * The State had no power to exclude the defendants and on that ground without going farther the Supreme Court of Illinois rightly held that the analogy (of suits against insurance companies) failed, and that the Kentucky judgment was void. If the Kentucky statute purports to have the effect attributed to it, it cannot have that effect in the present case."

The Flexner case, supra, was relied upon by the Appellate Court of Indiana in Banc, in Travis v. Fuqua, 1951, 121 Ind.App. 440, 97 N.E.2d 867, in reaching its conclusion that service of process in Indiana upon a railway agent in that State was invalid with respect to a bus operator in the State of Kentucky, over whose connecting bus line a ticket had been sold to the plaintiff by the railway in Indiana, for her transportation over the lines of both carriers. The Indiana statute invoked by the plaintiff to support the efficacy of service (Section 2-703, Burn's Anno.St.) was found by the Court to be generally analogous to the Kentucky statute construed in Flexner. The Court in Travis also distinguished the International Shoe case, but followed Philadelphia & Reading Railway Co. v. McKibbin, 1917, 243 U.S. 264, 37 S.Ct. 280, 61 L.Ed. 710.

In Partin v. Michaels Art Bronze Co. Inc., 3 Cir., 1953, 202 F.2d 541, at page

543, appears the following quotation from the opinion of Judge Goodrich in Pulson v. American Rolling Mill Co., 1 Cir., 1948, 170 F.2d 193:

" 'There are two parts to the question whether a foreign corporation can be held subject to suit within a state. The first is a question of state law: has the state provided for bringing the foreign corporation into its courts under the circumstances of the case presented? There is nothing to compel a state to exercise jurisdiction over a foreign corporation unless it chooses to do so, and the extent to which it so chooses is a matter for the law of the state as made by its legislature. If the state has purported to exercise jurisdiction over the foreign corporation, then the question may arise whether such attempt violates the due process clause or the interstate commerce laws of the federal constitution. Const. art. 1, § 8, cl. 3; Amend. 14. This is a federal question and, of course, the state authorities are not controlling. But it is a question which is not reached for decision until it is found that the State statute is broad enough to assert jurisdiction over the defendant in a particular situation.' "

Judge Goodrich also wrote the opinion for the Third Circuit Court of Appeals in the Partin case, supra, but found the facts in the latter case distinguishable because the Pennsylvania decisions there examined "would not regard this defendant corporation as subject to their jurisdiction." Furthermore the cause of action involved in that case, which was for libel, "had nothing to do with any business which the defendant had carried on in Pennsylvania." Hence, the Court of Appeals affirmed the District Court in dismissing the action for lack of jurisdiction over the foreign corporation, which merely sold parking meters to buyers in Pennsylvania and sent a technician to install them.

Erlanger Mills Inc. v. Cohoes Fibre Mills, Inc., 4 Cir., 1956, 239 F.2d 502, affirmed the District Court in dismissing an action brought in North Carolina, by a North Carolina corporation, for damages against a New York corporation which had sold merchandise to the plaintiff, f. o. b. defendant's New York plant, in which summons was served under a North Carolina statute which purported to grant jurisdiction over foreign corporations *not* transacting business in that State. In that case the plaintiff, after a visit by its representative to the defendant's plant in New York, placed an order with defendant for yarn to be shipped f. o. b. defendant's plant. After receipt of the shipment, the plaintiff complained that the yarn was defective and upon failure of the parties to adjust their differences, the plaintiff instituted an action in the Superior Court of North Carolina for damages. Service in that case was effected upon defendant's general manager at the offices of the plaintiff in North Carolina, while he was present there discussing the plaintiff's claim. The court distinguished the case from International Shoe Co. v. Washington, supra, and Travelers Health Association v. Virginia, 1950, 339 U.S. 643, 70 S.Ct. 927, 930, 94 L.Ed. 1154, on the ground that the facts in Erlanger did not indicate such "minimum contacts" by defendant with North Carolina "that the maintenance of the suit (did) not offend 'traditional notions of fair play and substantial justice.' " The suit in Erlanger arose upon a motion to quash service made in the Federal District Court for the Middle District of North Carolina to which, by reason of diversity, the case had been removed from the State court. The North Carolina statute invoked in support of the service of process (N.C. G.S. § 55–38.1) provided that "(a) Every foreign corporation shall be subject to suit in this State, by a resident of this State or by a person having a usual place of business in this State, whether or not such foreign corporation is transacting or has transacted business in this State and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising * * * "

[239 F.2d 504] etc. Erlanger held that upon its facts the "minimum contact" requirement of International Shoe had not been met.

The Pennsylvania act of September 26, 1951, PL–1457, § 22, 15 P.S.Pa. § 2852–1011 as amended, provided that "any foreign business corporation which shall have done any business in this Commonwealth, without procuring a certificate of authority to do so from the Department of State, shall be conclusively presumed to have designated the Secretary of the Commonwealth as its true and lawful attorney authorized to accept, on its behalf, service of process in any action arising out of acts or omissions of such corporation within this Commonwealth." This Pennsylvania statute was construed in Florio v. Powder Power Tool Corp., 3 Cir., 1957, 248 F.2d 367, 372, where the plaintiff, a Pennsylvania resident, was injured while using a power tool manufactured by the defendant, an Oregon corporation, as a result of an alleged defect in the manufacture of the tool. Because of diversity of citizenship, plaintiff instituted an action against the defendant in the United States District Court for the Eastern District of Pennsylvania, 148 F.Supp. 843, and summons was served upon the Secretary of the Commonwealth of Pennsylvania, pursuant to the Pennsylvania statute, supra, under F.R.Civ.P. 4(d) (7). The action was dismissed on defendant's motion, but the Court of Appeals reversed. Powder Power was never licensed to do business in Pennsylvania nor had it appointed any agent for the service of process in that State. It maintained no office nor any records or bank accounts therein. It did, however, enter into an exclusive territorial contract with a distributor, operative in Pennsylvania, by the terms of which the manufacturer exercised close supervision over the distributor's activities in the handling of the manufacturer's products. From time to time the manufacturer's representatives came into the Commonwealth upon the manufacturer's business, and instructed the distributor and purchasers in the handling of the manufacturer's products. The Court of Appeals held that "(S)uch activity was, at least, a part of a systematic scheme of sales promotion and as such clearly fell within the statutory requirements of a series of acts for pecuniary benefit." The directness of the doing of business by the Oregon corporation in the Commonwealth of Pennsylvania was held to be evidenced by the provisions of the contract between the manufacturer and the distributor. At page 373 of the opinion we read: "That a distributor's contract executed in a State is a factor in determining the extent of a foreign corporation's activities in the State is self-evident, not primarily because the series of acts contemplated is the shipment of goods into the State through channels of interstate commerce but because of the nature of the contract which may be so restrictive that the foreign corporation may exercise a substantial control over the business of the local distributor and thereby bring itself within the State's jurisdiction." The Court in Florio concluded not only that the Pennsylvania statute was effective to render the service upon the defendant valid, but that the statute was not unconstitutional either under Article 1, sec. 8, clause 3, or under the Fourteenth Amendment. The case held (at page 375) that "to permit Florio to maintain a suit against Powder Power in Pennsylvania comports with our traditional notions of fair play and substantial justice."

In the case before us, defendant urges that its pending motion is governed by Air Devices, Inc. v. Titus Manufacturing Corp., D.C.N.J.1958, 167 F.Supp. 1, affirmed 3 Cir., 1959, 269 F.2d 837. Air Devices is distinguishable factually from the case at bar. The facts in that case appear in the District Court's opinion. Defendant, an Iowa corporation, manufactured air diffusers in that State and sold its products to building contractors in interstate commerce through sales representatives in other States. The co-defendant Hutcheon was a sales representative for Titus under an agreement

which provided that Hutcheon would take orders for the products of Titus in New Jersey, and would fill such orders by purchasing the merchandise from Titus at a discount price, and reselling it at a higher price to the New Jersey purchaser. Hutcheon was a New Jersey corporation, exclusively owned by an individual of that name. The action was for alleged infringement of the Copyright Laws and for unfair competition. Plaintiff was a New York corporation. Service of process on both defendants (Titus and Hutcheon) was effected upon the wife of the sole owner of the co-defendant Hutcheon in her dual capacity as alleged agent and sales representative of Titus and as secretary of Hutcheon, at the principal office of Hutcheon in New Jersey. In affirming per curiam the action of the District Court in quashing the service of summons as to Titus, the Court of Appeals concurred in the finding of the Court below that "Hutcheon's status in its relationship to Titus was that of an independent contractor and that therefore Titus was not present in New Jersey in a sense that would support service of process. * * * It appears clearly that Titus has not maintained the minimum contacts in New Jersey necessary to warrant the court below in assuming jurisdiction of the foreign corporation, Titus."

In discussing the general fairness test applied in the International Shoe case, supra, to determine the propriety of substituted service upon a foreign corporation, the same Court, in Perkins v. Benguet Mining Co., 1952, 342 U.S. 437, at page 445, 72 S.Ct. 413, 418, 96 L.Ed. 485, speaking through Mr. Justice Burton, used the following language:

"The amount and kind of activities which must be carried on by the foreign corporation in the state of the forum so as to make it reasonable and just to subject the corporation to the jurisdiction of that state are to be determined in each case. The corporate activities of a foreign corporation which, under state statute, make it necessary for it to secure a license and to designate a statutory agent upon whom process may be served provide a helpful but not a conclusive test. * * * (I)f the same corporation carries on, in that state, * * * continuous and systematic corporate activities as it did here—consisting of directors' meetings, business correspondence, banking, stock transfers, payment of salaries, purchasing of machinery, etc.—those activities are enough to make it fair and reasonable to subject that corporation to proceedings in personam in that state, at least insofar as the proceedings in personam seek to enforce causes of action related to those very activities or to other activities of the corporation within the state."

The cause of action asserted in the Perkins case did not arise in the state in which the action was brought against the foreign corporation nor did it relate to the activities of that corporation in that state.

This Court feels bound to adopt the limitation of the International Shoe doctrine expressed in the Erlanger Mills case, in which, in the face of what appear to be similar facts, the Court said, 239 F.2d at page 507:

"Giving full scope to whatever liberalization results from the International Shoe case, the principle there declared does not, in our view, sustain jurisdiction in the North Carolina courts, where the only contact has been a single interstate shipment into North Carolina under the circumstances above recited."

It will be recalled that the "circumstances" referred to involved a contract of purchase of yarn by a North Carolina corporation from a New York corporation, and a sale in accordance therewith f. o. b. seller's plant in New York. The cause of action asserted in the North Carolina court arose out of the same single transaction. Nevertheless, service under a North Carolina statute generally similar to that of Indiana, was held in-

sufficient to invest the North Carolina court with jurisdiction over the foreign, New York, corporation.

In the case at bar, defendant's telephoned order to plaintiff in Indiana, confirmed in writing transmitted by mail, and accepted by plaintiff by similar means of communication, although resulting in a contract between the parties, did not amount to such "minimum contacts" by the defendant with the State of Indiana as to render inoffensive to "traditional notions of fair play and substantial justice" the maintenance of the Indiana action which resulted in the default judgment here sued upon. I, therefore, find that judgment void for lack of jurisdiction in the Indiana court over the defendant. Said defendant's presently pending motion for summary judgment in this Court must prevail. An order may be presented accordingly.