FRANK D. BYHAM v. THE NATIONAL CIBO HOUSE CORPORATION.

(Filed 23 July, 1965.)

**1. Process § 13— Evidence held sufficient to support finding that the contract between the parties was to be performed in this State.**

Evidence to the effect that under the franchise agreement between the resident plaintiff and defendant, a foreign corporation, the resident purchased the right to operate a restaurant bearing the chain trade name in the specified territory in this State, the corporation to select the location, set up the business, establish procedure during the opening week, control policies, maintain general supervision, furnish supplies and equipment, control advertising, inspect the books, etc., *held* sufficient to support a finding of the court that the contract was to be performed in North Carolina within the purview of G.S. 55-145(a)(1), notwithstanding that the goods and supplies were to be shipped to the resident by common carrier from points outside this State.

**2. Same—**

In determining whether service of process on a foreign corporation by service on the Secretary of State meets the requirements of due process, the ultimate test is not whether the foreign corporation is "doing business" in this State but whether the foreign corporation has minimum contacts in this State so that under the facts and circumstances of the particular case such service does not violate traditional notions of fair play and substantial justice. Factors to be considered in determining the question are listed in the opinion.

**3. Same— Evidence held to support conclusion that foreign corporation had contacts in this State in the performance of its business.**

The evidence tended to show that a nonresident corporation advertised in a newspaper published in this State for franchise owners for its restaurant chain, that the resident plaintiff answered one of the advertisements, that sequent thereto a nonresident who sold franchises for the corporation on a commission basis, but who had no specific territory and over whom the corporation exercised no control except that of accepting or rejecting franchise contracts at its home office, wrote him on corporation stationery and arranged a meeting at which the resident signed a contract with the nonresident to operate a restaurant in this State under the franchise, which contract was accepted by the corporation at its home office. *Held:* By accepting the franchise agreement, the corporation ratified all acts of the commission agent, and therefore the evidence supports the conclusion that the corporation had contacts within this State sufficient to warrant service of summons under the provisions of G.S. 55-146(a), (b).

**4. Same—**

In this action by a resident plaintiff against a nonresident corporation to rescind for fraud a contract negotiated and to be performed in this State, the evidence *is held* sufficient to support the conclusion that the corporation had sufficient contacts within this State to support service of summons on it by service on the Secretary of State under G.S. 55-146(a), (b) and that upon the particular facts, service under the statute meets the requirements of fair play and justice within the purview of due process of

law, so that our court acquired *in personam* jurisdiction over the corporation, it being admitted that notice had been given in accordance with the statute.

**5. Actions § 8—**

   When plaintiff alleges all the essential elements of fraud inducing plaintiff to execute the contract in suit, and seeks to rescind the contract for such fraud and to recover the consideration paid by plaintiff, the action arises out of the contract and is not in tort.

APPEAL by defendant from *Braswell, J.,* November 16, 1964, Civil Session of DURHAM.

*Jerry L. Jarvis and R. Roy Mitchell, Jr., for Plaintiff.*
*Hofler, Mount and White, by L. H. Mount and W. O. King for Defendant.*

MOORE, J. Appellant questions the validity of the service of summons on defendant, a foreign corporation, by service on the Secretary of State in accordance with the provisions of G.S. 55-146(a), (b), and challenges the constitutionality of G.S. 55-145(a)(1) as applied in this case.

This action was commenced 13 August 1964. The verified complaint alleges in substance these facts: Plaintiff is a resident of North Carolina. Defendant is a Tennessee corporation and is engaged in the selling and maintaining franchises for a chain of food and eating establishments known as "Cibo Houses," and servicing and supervising in part the establishments franchised and put in operation. Defendant solicited by mail and newspaper advertisements franchise owners in North Carolina. In consequence plaintiff contacted defendant relative to a franchise for the Durham, North Carolina, area. On 17 February 1964 plaintiff and defendant entered into a contract in writing whereby plaintiff became owner of such franchise, and plaintiff paid defendant the franchise fee of $2950. Prior to the execution of the contract, defendant, through its agents and through brochures, publications and advertisements, represented to plaintiff that he "could secure a franchise, lease, equip, open and begin operating a 'Cibo House' in the Durham, North Carolina, area for approximately" $5000. After the execution of the contract, plaintiff discovered it would require a minimum of $10,000. The representation was false to the knowledge of defendant and its agents and was made with the intent to deceive plaintiff and induce him to sign the contract. The said representation did in fact deceive plaintiff, and in reliance thereon plaintiff did sign the contract and pay the franchise fee to his hurt and damage. He is entitled

to rescind the contract and recover the sum of $2950 paid defendant. At all of the times referred to in the complaint and at the time of the institution of this action, defendant was transacting business in North Carolina and had not secured a certificate of authority therefor from the Secretary of State. The contract was executed by plaintiff in North Carolina and was to be "partly performed" within the State.

As indicated above, service of summons was had by service on the Secretary of State of North Carolina in accordance with the provisions of G.S. 55-146(a), (b).

Defendant entered a special appearance and moved to quash the service of process and for dismissal of the action on the ground that the court had not acquired jurisdiction of the person of defendant, asserting that the Secretary of State was not a process agent of defendant in North Carolina, defendant not having transacted business in the State, and the purported service of process contravenes the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the Constitution of the United States.

The court heard evidence and the arguments of counsel and made the following findings of fact and conclusions:

"2. The said contract between plaintiff and defendant became binding on both parties as of February 28, 1964, and was to be performed within the State of North Carolina.

"3. The defendant . . . does not hold a Certificate of Authority from the Secretary of State of North Carolina to transact business in this State.

. . . . .

"5. The Superior Court of Durham County acquired jurisdiction over the defendant under the authority of North Carolina General Statutes 55-145(1).

"6. Under the facts before the Court, North Carolina General Statutes 55-145(1) is not offensive to the due process clause of the Constitution of the United States.

The court denied the motion, ruling that jurisdiction of defendant had been acquired. Defendant filed exceptions and appealed.

The appeal raises two questions.

— I —

Did the court err in finding as a fact that the contract was to be performed in North Carolina?

The "Protected Territory Franchise Agreement" was introduced in evidence. It had been signed by the plaintiff and an agent of defend-

ant on 17 February 1964 and "accepted" by defendant at its home office in Memphis, Tennessee, on 28 February 1964. It has a provision that it is effective only when so accepted. It contains, among others, these provisions: The territory covered is Durham, North Carolina, and the life of the franchise is 10 years with the right of renewal for an additional 10-year period upon conditions. Plaintiff is to operate one or more "Cibo Houses" in the territory for sale, at retail, pizza, Italian style foods and related items, and specialize in "carry out" service. The name, style and design of the "houses" outdoor signs, uniforms of waitresses, etc., are to conform to those of other "Cibo Houses" of the Chain, as specified by defendant. Menus and specifications for preparation and service of food, as furnished and changed by defendant from time to time, must be followed exclusively. Only such food ingredients, goods, supplies, chinaware, equipment and fixtures as are approved by defendant are to be used, and these are to be purchased from defendant or sources approved by defendant. Plaintiff is to be given instructions, and may spend a week or more in a training school and in an operating "Cibo House" in preparation for opening and operating such business. After opening, plaintiff is "to provide free on-the-job training to other franchise owners or their employees as requested by" defendant. When plaintiff's "house" is opened defendant is to provide a "staff member" for a week to assist in establishing procedures, and training personnel. Plaintiff is to keep complete and accurate records according to a system devised by defendant, make monthly reports to defendant of gross receipts and financial status, and pay defendant, in addition to the franchise fee and indebtedness for items purchased, 3% of the gross receipts of the business. Defendant is to have the right at any time to examine plaintiff's books and records and to inspect the premises and operations. There are strict provisions in case of any default on the part of plaintiff in the performance of the contract on his part. Plaintiff is to adhere to defendant's advertising policy. Defendant will pay one-half the cost "of any approved co-operative advertising or sales promotion that is deemed advisable and profitable" by the defendant.

Mr. Kimpel, Vice President of defendant, testified "that the food and supplies which were purchased by the franchise operators from defendant . . . were delivered by common carrier; that it was the practice of the defendant . . . to send an employee to assist the purchasers of franchises in establishing a location and to assist them in the operation of the franchise business for the week of the opening; that other aspects of the franchise were performed by the defendant in Memphis, Tennessee.

It is clear that the business to be operated under the franchise agreement was to be operated entirely in Durham, North Carolina. All of the acts and duties of plaintiff were to be performed in Durham. Defendant reserved and retained the right to select the location, set up the business, establish procedures during the opening week, control policy, maintain general supervision throughout the life of the franchise, inspect the books, premises and operations, control all of the forms and details of the business, furnish supplies and equipment, and control advertising. Defendant was to take 3% of the gross receipts, and have exclusive control of the sales to plaintiff of needed goods and supplies. There is ample evidence to support the court's finding that the contract was to be performed in North Carolina. The fact that defendant was to cause goods and supplies to be shipped by common carrier from points outside the State to Durham for use in the business does not fix the place of defendant's performance of the contract at points outside the State. ". . . with respect to contracts for delivery of specific articles, the usual . . . place of business of the obligor is the place of performance, where no place is expressed." 17A C.J.S., Contracts, § 357, p. 358. Furthermore, the contract not only designated the place of performance but limits its performance to the Durham area.

— II —

Upon the facts and circumstances disclosed by the record, does the assumption of *in personam* jurisdiction of corporate defendant by the North Carolina court pursuant to G.S. 55-145(a)(1) offend the Due Process Clause of the Constitution of the United States?

G.S. 55-145(a)(1) — enacted in 1955 — provides: "Every foreign corporation shall be subject to suit in this State, by a resident of this State . . ., whether or not such foreign corporation is transacting or has transacted business in this State and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising as follows: (1) Out of any contract made in this State or to be performed in this State. . . ." It is conceded that plaintiff is a resident of North Carolina and defendant is a foreign corporation.

This is the first case which has reached this Court directly involving G.S. 55-145(a)(1). Former cases involving substituted service of process on foreign corporations have dealt with the question whether there was a showing of *transactions of business* sufficient to subject them to such process and to confer *in personam* jurisdiction on the North Carolina courts. *Equipment Co. v. Equipment Co.*, 263 N.C. 549, 140 S.E. 2d 3; *Farmer v. Ferris*, 260 N.C. 619, 133 S.E. 2d 492; *Reverie Lingerie, Inc. v. McCain*, 258 N.C. 353, 128 S.E. 2d 835; *Bab-*

*son v. Clairol, Inc.,* 256 N.C. 227, 123 S.E. 2d 508, and many others. Defendant urges "that the test must be the same one which has been used all along — Has the corporation had the necessary 'minimum contact' with this State? If it has, it is doing business here. If it has not, it is not doing business here."

Insofar as it is defendant's position that "doing business" is the ultimate test for determining due process in such cases, it is untenable. The controlling authority in this field is found in the decisions of the Supreme Court of the United States. The correct criteria are set out in the landmark case, *International Shoe Co. v. Washington,* 326 U.S. 310 (1945). As stated in *McGee v. International Life Ins. Co.,* 355 U.S. 220 (1957).

> "Since *Pennoyer v. Neff,* 95 U.S. 714, this Court has held that the Due Process Clause of the Fourteenth Amendment places some limit on the power of state courts to enter binding judgments against persons not served with process within their boundaries. But just where this line of limitation falls has been the subject of prolific controversy, particularly with respect to foreign corporations. In a continuing process of evolution this Court accepted and then abandoned 'consent,' 'doing business,' and 'presence' as the standard for measuring the extent of state judicial power over such corporations. See Henderson, the Position of Foreign Corporations in American Constitutional Law, c. V. More recently in *International Shoe Co. v. Washington,* 326 U.S. 310, the Court decided that 'due process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "the traditional notions of fair play and substantial justice" ' *Id.,* at 316."

"In *McGee* the Court noted the trend of expanding personal jurisdiction over nonresidents. As technological progress has increased the flow of commerce between states, the need for jurisdiction over nonresidents has undergone a similar increase. At the same time, progress in communications and transportation has made the defense of a suit in a foreign tribunal less burdensome. In response to these changes, the requirements for personal jurisdiction over nonresidents have evolved from the rigid rule of *Pennoyer v. Neff,* 95 U.S. 714, to the flexible standard of *International Shoe Co. v. Washington,* 326 U.S. 310. But it is a mistake to assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of state courts." *Hanson v. Denckla,* 357 U.S. 235, 250.

When the activities of the foreign corporation in the forum state have not only been continuous and systematic, but also give rise to the liabilities sued on, the forum state does not violate due process by taking jurisdiction of the suit instituted by a resident of such state, even though no consent to be sued or authorization to an agent to accept service of process has been given. On the other hand, the casual presence of the corporate agent or even his conduct of single or isolated activity in a state in the corporation's behalf are not enough to subject it to suit on causes of action unconnected with the activities there. *International Shoe Co. v. Washington, supra.* Between these extremes, "The amount and kind of activities which must be carried on by the foreign corporation in the state of the forum so as to make it reasonable and just to subject the corporation to the jurisdiction of that state are to be determined in each case" by testing the facts and circumstances by the aforementioned rule of "minimum contacts" and "fair play." *Perkins v. Benguet Mining Co.,* 342 U.S. 437 (1952).

"It is evident that the criteria by which we mark the boundary line between those activities which justify the subjection of a corporation to suit, and those which do not, cannot be simply mechanical or quantitative. . . . Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to fair and orderly administration of the laws which it was the purpose of the due process clause to insure." *International Shoe Co. v. Washington, supra.*

We list, in the numbered paragraphs following, several factors, some essential and others having weight, to be considered in determining whether the test of "minimum contacts" and "fair play" has been met.

(1). The form of substituted service adopted by the forum state must give reasonable assurance that the notice to defendant will be actual. *International Shoe Co. v. Washington, supra; McGee v. International Life Ins. Co., supra.*

(2). ". . . it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws." *Hanson v. Denckla, supra.* ". . . to the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state. The exercise of that privilege may give rise to obligations, and, so far as those obligations arise out of and are connected with the activities within the state, a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue." *International Shoe Co. v. Washington, supra.*

(3). Consideration should be given to any legitimate interest the state of the forum has in protecting its residents with respect to the activities and contacts of the foreign corporation. *Travelers Health Assn. v. Virginia,* 339 U.S. 432 (1950); *McGee v. International Life Ins. Co., supra.*

(4). Consideration should also be given to the question whether the courts of the forum state are open to the foreign corporation to enforce obligations of residents of such state created by the activities and contacts of the corporation. *Travelers Health Assn. v. Virginia, supra.*

(5). "An 'estimate of the inconveniences' which would result to the corporation from a trial away from its 'home' or principal place of business is relevant. . . ." *International Shoe Co. v. Washington, supra.*

(6). Consideration should be given to the question whether the crucial witnesses and material evidence are to be found in the forum state. *McGee v. International Life Ins. Co., supra; Travelers Health Assn. v. Virginia, supra.*

(7). When claims are small or moderate, individual claimants frequently cannot afford the cost of bringing an action in a foreign forum, thus placing the foreign corporation beyond the reach of the claimant. Whether this is the situation in a given case is pertinent. *McGee v. International Life Ins. Co., supra.*

(8). It is sufficient for the purposes of due process if the suit is based on a contract which has substantial connection with the forum state. *Id.*

(9). It is essential to determine the extent to which the legislature of the forum state has given authority to its courts to entertain litigation against foreign corporations. Provisions for making foreign corporations subject to service in the forum state is a matter of legislative discretion, and a failure to provide for such service is not a denial of due process. *Perkins v. Benguet Mining Co., supra.* Courts are recognizing, for the most part, that the statutes reflect on the part of their legislatures a conscious purpose to assert jurisdiction over nonresident defendants to the extent permitted by the due process requirement. *Nixon v. Cohn,* 385 P. 2d 305; *Gavenda Brothers, Inc. v. Elkins Limestone Company,* 116 S.E. 2d 910.

*McGee v. International Ins. Co., supra,* is a "single transaction" case. A resident of California bought a life insurance policy from an Arizona corporation. Later, defendant, a Texas corporation, assumed the obligations of the Arizona corporation and mailed a reinsurance certificate to insured in California. Insured accepted the policy and paid premiums by mail to defendant's office in Texas. Neither corpora-

tion had ever had any officer or agent in California or done any other business in that state. Plaintiff, beneficiary named in the policy, sent proof of death to defendant, but it refused payment on the ground that insured had committed suicide. Plaintiff instituted action on the policy in California and, pursuant to California statute, served notice by registered mail, and obtained judgment. Plaintiff then sued upon the judgment in Texas. The Texas courts refused to enforce the judgment holding that it was void because the service of   process violated the Due Process Clause and the California court acquired no jurisdiction. The Supreme Court of the United States reversed the Texas court, holding that the contract had a substantial connection with California and the substituted service did not violate the due process clause.

A number of states have statutes similar to N.C.G.S. 55-145(a) (1). [In the judgment below the court inadvertently referred to this statute as G.S. 55-145(1)]. These statutes generally provide that where the cause of action arises out of a contract with a foreign corporation, made in the forum state or to be performed in whole or in part in such state, an action *in personam* may be maintained in the forum state, upon substituted service of process. In no instance has such statute been declared unconstitutional. See: *Smyth v. Twin State Improvement Corp.*, 80 A. 2d 664, 25 A.L.R. 2d 1193 (Vt.); *Gavenda Brothers, Inc. v. Elkins Limestone Co., supra* (W. Va.); *State v. Knapp*, 131 S.E. 2d 81 (W. Va.); *Beck v. Spindler*, 99 N.W. 2d 670 (Minn.); *Dahlberg Co. v. Western Hearing Aid Center*, 107 N.W. 2d 381 (Minn.), cert den. 366 U.S. 961; *McKanna v. Edgar*, 380 S.W. 2d 889 (Texas). See also *Deveny v. Rheem Manufacturing Company*, 319 F. 2d 124 (C.C., 2C); *Ewing v. Lockheed Aircraft Corp.*, 202 F. Supp. 216 (D.C., Minn. 4D).

In the instant case the parties stipulate that "the mechanics of service and return set forth in subsections (a) and (b) of section 55-146 of the General Statutes of North Carolina were in all respects complied with." Hence, it is conceded that the statute gives reasonable assurance that the notice to defendant will be actual, and in this case was actual.

Defendant is not by nature and intent localized in Tennessee in any sense other than to meet the requirement of the corporation laws that it have a "home" or principal office at some locality. The contract states, "It is understood and agreed by the parties hereto that it is of substantial value and importance to both the National Cibo House and Franchise Owner that a chain of Cibo Houses be established all using the name 'Cibo House' " etc. It is clear that it was the purpose of defendant to extend its business operations to many states. It had contacts with North Carolina. It proposed to extend its chain of franchises

to North Carolina and placed "advertisements in local (North Carolina) newspapers" soliciting franchise owners. Plaintiff answered one of the advertisements. "He met a man in Greensboro (North Carolina) by the name of C. E. Miller, as a result of the advertisement." C. E. Miller had a "flip sheet" which had pictures of "Cibo Houses" and showed how the franchise businesses were operated. C. E. Miller had written plaintiff on stationary which purported to be the National Cibo House Corporation stationary. As a result of the meeting with Miller, plaintiff signed the contract and sent it to the home office at Memphis, Tennessee, for acceptance. After acceptance of the contract by defendant, "a representative of the National Cibo House Corporation came to North Carolina in an endeavor to help him (plaintiff) in establishing a location; . . . the representative took him to High Point, North Carolina, where there was an establishment which purported to be a Cibo House."

Mr. Kimpel, Vice President of defendant, testified that "he was not aware that there were other Cibo House franchises in the State of North Carolina; that he would not testify positively that there was not such franchises." Further: ". . . Mr. Miller who had secured a contract from the plaintiff . . . sold Cibo House franchises strictly on a commission basis and . . . was at liberty to perform these services for as many companies as he chooses. . . . C. E. Miller was not a resident of North Carolina . . . was not assigned a specific territory; nor did the defendant corporation exercise any control over his activities other than accepting or rejecting franchise contracts in Memphis, Tennessee. . . . Mr. Miller had no follow-up duties after the contract had been completed."

Accepting Mr. Kimpel's testimony as true, the fact remains, as far as the present inquiry is concerned, Miller was acting in behalf of defendant in North Carolina in negotiating a contract with plaintiff. It is reasonable to infer that plaintiff's letter to defendant, in response to the advertisement in the local paper, was referred to Miller by defendant. Miller wrote plaintiff on defendant's stationary and arranged the Greensboro meeting. When plaintiff's signature to the contract was obtained, defendant accepted it and thereby accepted the benefits of Miller's activities and ratified them. Miller signed the contract, in the first instance, as agent for defendant. Defendant, as its initial step in performing the contract, sent a representative to North Carolina to assist in procuring a location for plaintiff's "Cibo House." It does not lie in the mouth of defendant to say that it had no contacts with North Carolina. Furthermore, the contract made was to be performed in North Carolina by the establishment of a "House" in Durham to do business exclusively in North Carolina — a business in which the de-

fendant not only had a substantial financial interest, but which would be subject to its general control and policy.

It is true that according to the technical rules of construction, the franchise agreement was a Tennessee contract. The final act necessary to make it a binding obligation was done in Tennessee — the acceptance by defendant at its home office. *Compania de Astral v. Boston Metals Company*, 205 M.D. 237, 107 A. 2d 357, 108 A. 2d 372, 49 A.L.R. 2d 646. However, as we have seen, the negotiations took place in North Carolina, it was to be performed in North Carolina, and defendant undertook to perform in North Carolina.

Defendant purposely availed itself of the privileges of conducting activities in North Carolina, and thus invoked the benefits and protection of its laws. This gave rise to obligations connected with the activities, *i.e.*, that the negotiations be free of fraud or oppression, and that the contract, if valid, be performed in this state according to its terms. North Carolina has a legitimate interest in the establishment and operation of enterprises and trade within its borders and the protection of its residents in the making of contracts with persons and agents who enter the state for that purpose. The courts of the state have been and now are open to defendant for protection of its activities and to enforce the valid obligations which a resident or residents of this state have assumed by reason of defendant's contacts and activities. There is no showing of unusual or harmful inconvenience which would be suffered by defendant in litigating this action in North Carolina. It would appear that it would be a greater inconvenience and hardship for plaintiff to prosecute his action in Tennessee inasmuch as the amount of money involved is relatively small and most of the witnesses and evidence is of necessity in North Carolina. There is almost always some hardship to the party required to litigate away from home. But there is no constitutional requirement that this hardship must invariably be borne by the plaintiff whenever the defendant is a nonresident. *Henry R. Jahn & Son, Inc. v. Superior Court*, 323 P. 2 2d 437.

This action arose out of the contract. The contract is the subject of the action — "the thing in respect to which the plaintiff's right of action is asserted." *Mills v. Cemetery Park Corp.*, 242 N.C. 20, 32, 86 S.E. 2d 893. Fraud is ordinarily a tort. But plaintiff elected not to sue in tort for damages; he elected to sue in equity for rescission of the contract and to recover the amount paid. *Surratt v. Insurance Agency*, 244 N.C. 121, 131, 93 S.E. 2d 72. The validity of the contract is the matter which the complaint seeks to put at issue.

The case of *York Mfg. Co. v. Colley*, 247 U.S. 21, upon which defendant relies is not apposite. Plaintiff, a Pennsylvania corporation, sold to defendants, residents of Texas, machinery for making ice,

shipped the machinery to Texas and sent an engineer to Texas to install the machinery and test its operation. Defendants accepted the machinery but failed to pay the purchase price. Plaintiff filed suit *in Texas,* where defendants resided. The Texas courts dismissed the action on the ground that plaintiff had no standing in the Texas court because it had done business in Texas without having obtained a permit therefor. The Supreme Court of the United States reversed the Texas court, holding that the ruling of that court was repugnant to the *Commerce Clause,* the installation of the machinery was germane to the transaction of interstate business and did not involve the doing of local business. There the foreign corporation was seeking to submit its cause to the jurisdiction of the Texas court; in the instant case the foreign corporation is attempting to avoid the jurisdiction of the North Carolina court.

The contract in question was to be performed in North Carolina and has a substantial connection with the State; defendant had sufficient contacts with the State to satisfy due process requirements; and the court's assumption of *in personam* jurisdiction over defendant in action does not "offend traditional notions of fair play and substantial justice" within the contemplation of the Due Process Clause.

The judgment below is
Affirmed.