Jake Harold **BOWMAN**, Philip G. Griffin, A. Donald Brinton and Midland Industries, Inc., Appellants,

v.

**CURT G. JOA, INC.,** Appellee.

**No. 10248.**

United States Court of Appeals Fourth Circuit.

Argued March 8, 1966.

Decided May 24, 1966.

---

Harry DuMont, Asheville, N. C. (Uzzell & DuMont, Asheville, N. C., on brief), for appellants.

Roy W. Davis, Jr., Asheville, N. C. (Van Winkle, Walton, Buck & Wall, Asheville, N. C., and Foley, Sammond & Lardner, Milwaukee, Wis., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, MARVIN JONES, Senior Judge, United States Court of Claims,* and BRYAN, Circuit Judge.

MARVIN JONES, Senior Judge:

This appeal concerns the jurisdiction of a Federal District Court over the person of a foreign corporation in a diversity action. The individual appellants are all residents of North Carolina and the corporate appellant is also located in that State, whereas the appellee is a Wisconsin corporation. In December 1963 appellants contracted for the purchase from appellee of a Cushion and Protective Pad Making Machine at a price of $153,500, f. o. b. appellee's manufacturing plant in Wisconsin. When appellee allegedly failed to perform the contract, appellants filed suit in the United States District Court for the Western District of North Carolina, requesting specific performance and claiming damages for delay in fulfilling the contract. Apparently, in the alternative, they claim $50,-000 in actual damages and $20,000 allegedly paid by appellants to appellee after execution of the conditional sales contract in 1963.

Substituted service of process was made in the manner provided by the North Carolina long-arm statute, as is permitted by Rule 4(d) (7) of the Federal Rules of Civil Procedure.[1] Appellee then made a special appearance and moved to dismiss the action under Rule 12(b) for lack of personal jurisdiction over the appellee foreign corporation. After receiving affidavits and briefs from both sides, the District Court dismissed appellants' action, holding that the North Carolina long-arm statute did not allow in personam jurisdiction under these circumstances. This appeal followed. We affirm.

In order to determine this jurisdictional question, a review of the pertinent facts is necessary. Appellee is a Wisconsin corporation engaged, among other activities, in the manufacture of a patented machine which produces paper cushions and protective pads (macerated pads). The three individual appellants became

---

* Sitting by designation of the Chief Justice.

1. Rule 4(d) (7), 28 U.S.C. (1964), provides in part for service on a foreign corporation:
 " * * * in the manner prescribed by the law of the state in which the district court is held for the service of summons or other like process upon any such defendant in an action brought in the courts of general jurisdiction of that state."

interested in purchasing one of these machines for use in a prospective macerated pad business in North Carolina. Appellee was contacted concerning a possible sale. Negotiations followed between the parties in North Carolina during August of 1963.[2] Contract negotiations continued between the parties by mail and telephone, with one or two more short visits by an officer of appellee in North Carolina, and the final written conditional sales contract was executed in Wisconsin in December 1963.[3]

By the terms of the contract, appellee promised to have the machine ready for shipment f. o. b. the manufacturing plant in Wisconsin within 120 days. The buyers (appellants) agreed to pay all freight and shipping expenses. The seller (appellee) agreed to provide limited supervision of installation in appellants' plant in North Carolina but appellants were to perform the installation and bear all the costs involved. The intention of the individual appellants was to form a corporation in North Carolina (appellant Midland Industries, Inc.) for the actual purchase and use of this machine.

Aside from the negotiation of this sales contract, appellee had almost no other contacts with the State of North Carolina. Between 1956 and 1962 it did have a contract to provide engineering services of a design, research, and development nature to a North Carolina furniture manufacturer. This contract to provide engineering services was executed in Wisconsin but, except for occasional visits by employees of appellee to North Carolina, the work was not found to have been performed in North Carolina. After 1962, the appellee had no business contacts with the State other

than the negotiation of the instant contract in the fall of 1963. During the occasional visits of appellee's employees to North Carolina in relation to the engineering consultant work, appellee had joined the Lenoir Country Club, which is primarily an eating club.

Appellee has never maintained an office in North Carolina nor have any of its employees lived there. None of its salesmen have ever conducted any business from an office in that State; it maintains no manufacturing or other facilities there; and no telephone listing is kept there. Appellee is not licensed to do business in North Carolina and owns no property in that State.

In February 1965 the appellants filed this complaint in the Federal District Court in North Carolina, claiming that appellee breached the sales contract in refusing to manufacture and deliver a machine to appellants at appellee's plant in Wisconsin. Substituted service of process was had by serving the Secretary of State of North Carolina as provided for in N.C.G.S. § 55–146. Appellee received a copy of the Summons and the Complaint by registered mail in Wisconsin. On March 10, 1965, appellee made a special appearance in the District Court and moved to dismiss the action for lack of personal jurisdiction over it—a foreign corporation.

After holding a pretrial conference, the District Court requested both parties to file affidavits, counter-affidavits, and briefs on the jurisdictional question. The lower court then proceeded to consider the motion on the affidavits and briefs filed and, on July 6, 1965, issued a memorandum opinion granting the motion and dismissing the action.

2. It is not clear from the affidavits whether the initial solicitation came from appellants or appellee. However, because of the manner in which we determine this appeal, a decision on the means of solicitation becomes unnecessary.

3. The affidavits conflicted on where the final act necessary to complete the binding contract took place. Proposed contracts were sent back and forth by mail between North Carolina and Wisconsin several times during December. The District Court decided this factual issue in favor of appellee, finding the final act of execution occurred in appellee's offices in Wisconsin. Since this finding is not clearly erroneous, we must accept it. Rule 52(a). The burden of proof in this jurisdictional question is on the appellants. See n. 23, infra.

■ An initial question we must consider is one raised by appellants during oral argument. It concerns the District Court's pretrial order wherein it requested affidavits and briefs be filed. A statement was made in the order that there would be further pretrial at June Term, 1965. The order was issued on April 13, 1965, and gave the parties until June 1 to submit the requested material. Appellants contended at oral argument, although no argument is made on this point in their brief, that they were misled by the order into believing that additional affidavits would be permitted on the jurisdictional question after the second pretrial conference referred to in the order.

We do not read the pretrial order as intimating that a further pretrial conference would be held on the jurisdictional question, or that additional affidavits would be called for after the court had studied the ample affidavits, counter-affidavits, and briefs already filed. It would be an unreasonable reading of the pretrial order to find otherwise. In addition, appellants failed to call this alleged misunderstanding to the attention of the District Court, either before or after its decision in July. Neither in their brief nor during oral argument did they allege any additional facts that might have been shown by further affidavits. We hold that appellants were not prejudiced by this alleged procedural error, and so affirm the action of the lower court on this phase of the case.

■ We come now to the primary question raised on this appeal: Whether the District Court had personal jurisdiction over the appellee, a foreign corporation. This question of a foreign corporation's amenability to service of process in a diversity action is not dealt with in any federal statute; nor is it covered in the Federal Rules of Civil Procedure. Gkiafis v. Steamship Yiosonas, 342 F.2d 546, 548 (4th Cir. 1965).[4] The Federal Rules do, however, provide the procedure for service of process on foreign corporations. Rule 4(d) (3) offers a federal route for service by delivery of a copy of the summons and the complaint to an agent of the corporation,[5] and Rule 4(d) (7) allows the District Court to utilize the process-serving procedures set up for the state courts of the state in which the federal court is sitting.[6] Again, these two federal rules pertain only to the manner in which the federal district court makes service of process and they do not tell us when a corporation is subject to service. Arrowsmith v. United Press International, 320 F.2d 219, 226 (2d Cir. 1963).[7]

■■ 28 U.S.C. § 1391(c) does provide that "[a] corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business," but this relates to venue and not to jurisdiction. Arrowsmith v. United Press International, supra, at 225. Certainly Congress has the power to define the limits of diversity jurisdiction for the federal district courts,[8] but,

---

4. See generally, Note, Jurisdiction of Federal District Courts Over Foreign Corporations, 69 Harv.L.Rev. 508 (1956).

5. Rule 4(d) (3), 28 U.S.C. (1964), provides, in part, for service:
"Upon a * * * foreign corporation * * * by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant."

6. See n. 1, supra.

7. See Hart & Wechsler, The Federal Courts and the Federal System, 959 (1953); But see, Arrowsmith v. United Press International, 320 F.2d 219, 239 (2d Cir. 1963) (Clark, J., dissenting).

8. See, e. .g., Arrowsmith v. United Press International, 320 F.2d 219, 226 (2d Cir. 1963); Gkiafis v. Steamship Yiosonas, 342 F.2d 546, 548 (4th Cir. 1965). See generally, Note, Jurisdiction of Federal District Courts Over Foreign Corporations, 69 Harv.L.Rev. 508, 517 (1956); Comment, Federal Jurisdiction Over Foreign Corporations And The Erie Doctrine, 64 Colum.L.Rev. 685, 692 (1964).

in the absence of any congressional guidelines, the courts have necessarily looked elsewhere for a determination of this question.

In Pulson v. American Rolling Mill Co., 170 F.2d 193, 194, (1st Cir. 1948), it was held that, where service is made under Rule 4(d) (7), a federal district court sitting in a diversity case shall apply the jurisdictional limits applicable to the state courts. Judge Goodrich, writing for the First Circuit, held that:

> There are two parts to the question whether a foreign corporation can be held subject to suit within a state. The first is a question of state law: has the state provided for bringing the foreign corporation into its courts under the circumstances of the case presented? There is nothing to compel a state to exercise jurisdiction over a foreign corporation unless it chooses to do so, and the extent to which it so chooses is a matter for the law of the state as made by its legislature. If the state has purported to exercise jurisdiction over the foreign corporation, then the question may arise whether such attempt violates the due process clause or the interstate commerce clause of the federal constitution. Const. art. 1, § 8, cl. 3; Amend. 14. This is a federal question and, of course, the state authorities are not controlling. But it is a question which is not reached for decision until it is found that the State statute is broad enough to assert jurisdiction over the defendant in a particular situation.

The court then found that the state jurisdictional statute did not reach the factual situation present in the district court and affirmed the dismissal. Therefore, even though the court might possibly have found the state statute to be more restrictive than constitutional limits would permit, the district court had no choice but to conform to the state-defined limits on jurisdiction.

This concept of requiring the federal courts to follow the jurisdictional lead of the state courts in diversity cases has apparently been adopted by the vast majority of the federal circuits.[9] It has for its basis the state court-federal court uniformity approach [10] laid down in Erie R. R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and in the Supreme Court cases which followed.[11] We adopt this rule and hold the two-step approach set down in Pulson v. American Rolling Mill Co., 170 F.2d 193 (1st Cir. 1948), to be applicable to this action; service of process having been made under Rule 4(d) (7) and in the manner provided by the North Carolina statute.[12]

9. Pulson v. American Rolling Mill Co., 170 F.2d 193 (1st Cir. 1948); Arrowsmith v. United Press International, 320 F.2d 219 (2d Cir. 1963); Partin v. Michaels Art Bronze Co., 202 F.2d 541 (3d Cir. 1953); Lone Star Package Car Co. v. Baltimore & O. R. R., 212 F.2d 147 (5th Cir. 1954); Smartt v. Coca-Cola Bottling Corp., 318 F.2d 447 (6th Cir. 1963); Canvas Fabricators, Inc. v. William E. Hooper & Sons, 199 F.2d 485 (7th Cir. 1952); Simpkins v. Council Mfg. Corp., 332 F.2d 733 (8th Cir. 1964); Steinway v. Majestic Amusement Co., 179 F.2d 681, 18 A.L.R.2d 179 (10th Cir. 1949).

10. Guaranty Trust Co. v. York, 326 U.S. 99, 108–109, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945).

11. Guaranty Trust Co. v. York, supra, n. 10; Angel v. Bullington, 330 U.S. 183, 67 S.Ct. 657, 91 L.Ed. 832 (1947); Woods v. Interstate Realty Co., 337 U.S. 535, 69 S.Ct. 1235, 93 L.Ed. 1524 (1949); Bernhardt v. Polygraphic Co., 350 U.S. 198, 76 S.Ct. 273, 100 L.Ed. 199 (1956). The decisions in Byrd v. Blue Ridge Rural Elec. Co-op., 356 U.S. 525, 533–540, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958); and Hanna v. Plumer, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), we feel, do not alter the Erie rationale so as to warrant disregarding the interest of the state in controlling the jurisdictional reach of the courts sitting therein.

12. There is in existence somewhat of a controversy as to whether the federal district court should follow the jurisdictional dictates of the states when service of process is made via the federal route of Rule 4(d) (3). See Judge Clark's dissent in Arrowsmith v. United Press International, 320 F.2d 219, 234 (2d Cir.

■ In determining whether this factual situation comes within the jurisdictional confines of the North Carolina long-arm statute, we must look to the construction given that statute by the state courts. Westcott-Alexander, Inc. v. Dailey, 264 F.2d 853, 859 (4th Cir. 1959). The North Carolina long-arm statute under which the appellee received service of process reads, in part, as follows:

N.C.G.S. § 55–144 provides:

Suits against foreign corporations transacting business in the State without authorization.—Whenever a foreign corporation shall transact business in this State without first procuring a certificate of authority so to do from the Secretary of State or after its certificate of authority shall have been withdrawn, suspended, or revoked, then the Secretary of State shall be an agent of such corporation upon whom any process, notice, or demand in any suit upon a cause of action arising out of such business may be served.

N.C.G.S. § 55–145 provides:

Jurisdiction over foreign corporations not transacting business in this state. (a) Every foreign corporation shall be subject to suit in this State, by a resident of this State or by a person having a usual place of business in this State, whether or not such foreign corporation is transacting or has transacted business in this State and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising as follows:

(1) Out of any contract made in this State or to be performed in this State; or

(2) Out of any business solicited in this State by mail or otherwise if the corporation has repeatedly so solicited business, whether the orders or offers relating thereto were accepted within or without the State; or

(3) Out of the production, manufacture, or distribution of goods by such corporation with the reasonable expectation that those goods are to be used or consumed in this State and are so used or consumed, regardless of how or where the goods were produced, manufactured, marketed, or sold or whether or not through the medium of independent contractors or dealers; or

(4) Out of tortious conduct in this State, whether arising out of repeated activity or single acts, and whether arising out of misfeasance or nonfeasance.

■ N.C.G.S. § 55–144 concerns "foreign corporations transacting business in the state" and, therefore, necessarily seems to be more restrictive in its application than G.S. § 55–145, the latter section dealing with "foreign corporations *not* transacting business" [emphasis added] in the state. Such an inter-

1963); Hart & Wechsler, The Federal Courts and the Federal System, 960 (1953). And, in a diversity action concerning a federal question, there is even more support for adopting a federal jurisdictional rule. See Arrowsmith v. United Press International, 320 F.2d 219, n. 9 (2d Cir. 1963). However, in diversity actions brought to the district court either by removal from a state court or through service of process in the manner provided by the state statute—there being no federal procedure available for service—there is almost uniform agreement that state jurisdictional limits, as defined by the state, should govern the federal court's jurisdiction. See Circuit Court cases cited, n. 9, supra; Arrowsmith v. United Press International, supra, at 242 (Clark, J., dissenting); Hart & Wechsler, supra, at 959; ALI, Study of the Division of Jurisdiction Between State and Federal Courts 11 (Tent. Draft No. 1, 1963); 1 Barron & Holtzoff, Federal Practice & Procedure § 179, at 696 (Rules ed. 1960); Note, 69 Harv.L. Rev. 508, 523–524 (1956). That the state limitations apply in a removal action in this circuit, see Westcott-Alexander, Inc. v. Dailey, 264 F.2d 853, 858 (4th Cir. 1959).

pretation has been given in Worley's Beverages, Inc. v. Bubble Up Corp., 167 F.Supp. 498, 504 (E.D.N.C.1958);[13] a decision referred to by the Supreme Court of North Carolina in Abney Mills v. Tri-State Motor Transit Co., 265 N.C. 61, 143 S.E.2d 235, 241 (1965). In stating that it is more restrictive, we, of course, mean that the foreign corporation must have more contacts with the forum state in order to come within the statutory limits.

On this ground alone it would appear that appellee's activities in North Carolina fall outside of G.S. § 55–144. The facts amount up to two intermittent acts: (1) The contract to supply engineering consultant services to a furniture manufacturer. The work was not shown to have been performed within the State of North Carolina; performance in that contract was completed at least a year prior to the events involved in the case at bar; and the action here in suit did not arise out of that consultant contract. (2) The negotiation of the single-item sales contract here involved. These activities approach, and may even be less than, the minimum contacts set forth in G.S. § 55–145. So, unless the provisions of G.S. § 55–145 are to be construed as being included within the reach of G.S. § 55–144 and therefore meaningless, it must be held that G.S. § 55–144 is too restrictive to cover the present action.

It could be argued, however, that G.S. § 55–144 and G.S. § 55–145 merely complement each other and that the term "transacting business" used in G.S. § 55–144 was intended to be flexible enough to take advantage of any new interpretations placed on the Fourteenth Amendment after the enactment of the long-arm statute. The present North Carolina statute was enacted after the landmark decision in International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), wherein the old jurisdictional tests of "consent," "presence," and "doing business" were discarded and a qualitative test of "minimum contacts" was established for determining the constitutional limits on a state court's jurisdictional reach. North Carolina's previous statute had used the phrase "doing business," and in July 1957 this was replaced with the present G.S. § 55–144 and its "transacting business" phraseology. In Abney Mills v. Tri-State Motor Transit Co., 265 N.C. 61, 143 S.E.2d 235, 241 (1965), this present language was held to be more liberal than the previous "doing business."

The Supreme Court has decided two additional cases on this subject since the present North Carolina statute was enacted in 1957.[14] Some state courts have construed their long-arm statutes as being drafted to the limits allowable by the Fourteenth Amendment, even as these constitutional standards are defined subsequent to the enactment of the state law.[15] We feel that a decision on

13. "Looking to the North Carolina Statutes quoted earlier, it is obvious that G.S. § 55–144 requires more 'contacts' in North Carolina than G.S. § 55–145 * * *." Worley's Beverages, Inc. v. Bubble Up Corp., 167 F.Supp. 498, 504 (E.D.N.C. 1958).

14. McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); Hanson v. Denkla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). Apparently, a state court can now exercise jurisdiction based on a single act by the foriegn corporation within the forum state. However, there are definite limits on this. If the action arises from a contract, the contract must have "substantial connection" with the state (McGee v. International Life Ins. Co., supra, 355

U.S. at 223, 78 S.Ct. 199), and, in addition, the foreign corporation must still have "minimum contracts" with the state and it must have voluntarily associated with the state. Hanson v. Denkla, supra, 357 U.S. at 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283. See generally, Note, Developments in the Law—State-Court Jurisdiction, 73 Harv.L.Rev. 909, 935 (1960); Note, Jurisdiction Over Nonresident Corporations Based on a Single Act: a New Sole for International Shoe, 47 Geo.L.J. 342 (1958).

15. See, e. g., Gkiafis v. Steamship Yiosonas, 342 F.2d 546, 550, nn. 5 & 6 (4th Cir. 1965); Moore-McCormack Lines, Inc. v. Bunge Corp., 307 F.2d 910 (4th Cir. 1962); Williams v. Connolly, 227 F.Supp. 539, 542 (D.Minn.1964).

either of these questions is, however, unnecessary because of a construction given G.S. § 55–145 recently by the North Carolina Supreme Court.

In Abney Mills v. Tri-State Motor Transit Co., 265 N.C. 61, 143 S.E.2d 235, 243 (1965), "transacting business" was construed as activities in North Carolina which are " 'substantial,' 'continuous and systematic,' and 'regular,' as distinguished from 'casual,' 'single' or 'isolated acts'." We therefore agree with the lower court that the isolated acts of appellee do not come within G.S. § 55–144.

 By its terms, G.S. § 55–145(a) applies to foreign corporations *not* transacting business in North Carolina and so seems to be intended to take advantage of the liberal constitutional limits provided by the decision in International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The section confers jurisdiction over any cause of action arising out of any one of four specific and well-delineated activities. If one of these four activities is present but the cause of action arises elsewhere, or if none of the four activities is present although others may be present, there is no jurisdictional grant. Whether the statute could be even broader, i. e., more liberal, and either enumerate additional kinds of activities or state the jurisdictional limits in general terms so as to go to the farthest reaches allowable under the federal constitution, we do not decide or offer comment. For the state legislature did not choose to do so.[16] If this statute is less liberal than the latest constitutional interpretations would allow, this is proper. The states need not provide their courts with jurisdictional powers over every action which could constitutionally be brought in the state. Perkins v. Benguet Mining Co., 342 U.S. 437, 440, 72 S.Ct. 413, 96 L.Ed. 485 (1952).

 The first enumerated activity under G.S. § 55–145(a) is the most applicable to the instant case. Subsection (1) provides jurisdiction over any cause of action arising "[o]ut of any contract made in this State or to be performed in this State * * *." A contract made in the state is one which is executed in the state, i. e., where the "final act necessary to make it a binding obligation was done" in the forum state. Byham v. National Cibo House Corp., 265 N.C. 50, 143 S.E. 2d 225, 233 (1965).[17] After studying the contradictory affidavits on this crucial point, the District Court found that the final act of executing the contract was the signature by appellee in Wisconsin. The court found that appellants had signed a proposed contract and mailed it to appellee in Wisconsin and that appellee completed the contract in that State. This finding of fact is not clearly erroneous, there being sufficient evidence to support it, and so we accept it and consider the contract made in Wisconsin.

16. Texas adopted a long-arm statute in 1959 that is obviously more all-inclusive than the North Carolina statute. Tex. Civ.Stat., art. 2031b (Vernon Supp.1960), sec. 4, provides:

"For the purpose of this Act, and without including other acts that may constitute doing business, any foreign corporation, * * * shall be deemed doing business in this State by entering into contract by mail or otherwise with a resident of Texas to be performed in whole or in part by either party in this State, or the committing of any tort in whole or in part in this State."

See generally, Thode, In Personam Jurisdiction; Article 2031B, the Texas "Long Arm" Jurisdiction Statutes; and the Appearance to Challenge Jurisdiction in Texas and Elsewhere, 42 Texas L.Rev. 279 (1964).

In Lone Star Motor Import, Inc. v. Citroen Cars Corp., 288 F.2d 69, 72–73 (5th Cir. 1961), it was said, concerning this statute, that "it seems highly likely that * * * the Texas purpose was to exploit to the maximum the fullest permissible reach under federal constitutional restraints."

17. See, e. g., Keco Industries, Inc. v. ACF Industries, Inc., 316 F.2d 513 (4th Cir. 1963); Frankel v. Johns-Manville Corp., 257 F.2d 508 (3d Cir. 1958); 16 Am.Jur. 2d, Conflict of Law, § 36 (1964).

■ Was the contract between appellants and appellee to be performed in North Carolina? On this second critical finding of fact the lower court also decided in favor of appellee. We agree. This was a sales contract with delivery f. o. b. the seller's plant in Wisconsin. Almost the entire performance of the contract was to occur at the seller's manufacturing plant, the buyers to accept delivery there and pay all shipping costs to their North Carolina business site. The seller was to provide one technician for one day at the buyers' plant to advise appellants on how they were to install the machine. After the appellants had completed the installation, appellee's technician was to return to North Carolina and inspect the installation and supervise the initial production run on the machine. The substantial portion of the over-all contract performance therefore occurred at appellee's manufacturing plant in Wisconsin.

States which have sought to bring within the jurisdiction of their courts foreign corporations which contract with residents of the state, whether the whole or any part of the contract is to be performed in the forum state, have drafted their long-arm statutes to read "to be performed in whole or in part" in the state.[18] North Carolina has not chosen to use this broader language in its statute and so we must construe G.S. § 55–145(a) (1) as relating only to those contracts that are to be performed to a substantial degree within the forum state.

The Supreme Court of North Carolina has been concerned with G.S. § 55–145 (a) (1) on only one occasion,[19] and, in that case, the contract involved was substantially different than the sales contract here at issue. In Byham v. National Cibo House Corp., 265 N.C. 50, 143 S.E.2d 225 (1965), the foreign corporation contracted outside North Carolina to sell a franchise to a resident of the state to operate a restaurant in North Carolina. The franchise was for ten years and the resident of North Carolina promised to operate the restaurant in conformity with the instructions of the foreign corporation. This included instructions as to menus, food preparation, equipment, uniforms, etc. All food ingredients, equipment, supplies, and various other items had to be approved by the foreign corporation and purchased either from it or sources approved by it. These purchased items were to be shipped in from outside the state by common carrier. The foreign corporation had the right to inspect the books and business operations of the restaurant at any time and was to receive three percent of the gross receipts, in addition to the franchise fee and the cost of purchased items.

The court, in Byham v. National Cibo House Corp., 265 N.C. 50, 143 S.E.2d 225 (1965), found that this franchise contract was to be performed in North Carolina and the contract therefore came under the jurisdictional provisions of G.S. § 55–145(a) (1). The court gave no indication that it would construe "to be performed" as meaning anything

---

18. See, e. g., Vt.Stat.Ann., title 12, § 855 (1959), which provides, in part:
 "If a foreign corporation makes a contract with a resident of Vermont to be performed in whole or in part by either party in Vermont * * *."
 [Adopted in 1947; eight years previous to the enactment of the North Carolina statute.]
 Minn.Stat.Ann., § 303.13, subd. 1(3) (Supp.1958), provides, in part:
 "If a foreign corporation makes a contract with a resident of Minnesota to be performed in whole or in part by either party in Minnesota * * *."
 Note that these statutes not only provide for contract performance, in whole or in part, in the forum state—but by *either* party.

19. "This is the first case which has reached this Court directly involving G.S. § 55–145 (a) (1). Former cases involving substituted service of process on foreign corporations have dealt with the question whether there was a showing of *transactions of business* sufficient to subject them to such process and to confer *in personam* jurisdiction on the North Carolina courts." Byham v. National Cibo House Corp., 265 N.C. 50, 143 S.E.2d 225, 230 (1965). [All italicized in original.]

less than total or substantial performance inside North Carolina. The contract involved was, of course, one covering the operation of a franchised restaurant in the forum state and so performance was obviously to take place in the State.

■ We affirm the finding of the District Court that this conditional sales contract was to be performed outside the forum state and so was not a contract falling within the provisions of G.S. § 55–145(a) (1).

The remaining three subsections of G.S. § 55–145(a) can readily be disposed of as not intended to apply to the instant action. Subsection (2) requires repeated acts of solicitation of business in the State; a fact clearly not present in this case. The District Court so held. Subsection (3) is likewise inapplicable because it relates to the manufacture of goods "with the reasonable expectation that those goods are to be used * * * in this State *and [they] are so used* * * *." [Emphasis added.] The machine sold to appellants has never entered North Carolina nor been used there.

■ Subsection (4) is inapplicable because this action is one of contract and not sounding in tort. Appellants have sought to bring their action within this subsection by alleging that appellee never intended to perform the contract, but planned to deceive appellants and cause them to act to their detriment. We agree with the District Court in concluding that this plea is insufficient to bring the action within subsection (4). The theme of this action is contract and not tort.[20]

For the above reasons we agree with the District Court that this cause of action does not come within any of the provisions of the North Carolina long-arm statute. Therefore, since the federal court in this diversity action is bound by the jurisdictional limits placed on the North Carolina courts by the state legislature, we need not reach the constitutional issue—whether the statutory provisions as applied to the facts here involved would be within the due process limitations of the Fourteenth Amendment. Nor do we express an opinion on whether the North Carolina long-arm statute could be broadened sufficiently to cover this kind of fact situation and still be held constitutional. In a similar vein, we refrain from comment on whether, if the federal court adopted its own jurisdictional limits, this case would fall within these limits.[21]

■ A final issue raised by appellants is that the findings of fact made by the lower court were erroneous. In disposing of this motion to dismiss for lack of personal jurisdiction over the defendant-appellee, the District Court proposed to hear the matter on affidavits alone. Rule 43(e). Both parties consented to this proposal. No request was made by appellants at any time to be allowed to offer oral testimony. For this reason, they cannot now complain of the procedure adopted by the lower court for deciding the factual issues, i. e., to determine the facts wholly from the conflicting affidavits presented.[22] And on the issue of jurisdiction, the party asserting the jurisdiction of the court, the plaintiffs-appellants, had the burden of proof.

---

20. It may also be noted that appellants did not rely upon or even mention the contention of tortious conduct in their brief to the District Court.

21. If the federal district courts were to follow a federal jurisdictional limit, the question obviously arises as to just what these limits would be. Conceivably, they could be the constitutional limits of due process under the Fourteenth Amendment which limit the reach of state courts, even though this Amendment is not binding on federal courts. See generally, Note, 69 Harv.L.Rev. 508 (1956); Comment, 64 Colum.L.Rev. 685 (1964).

22. Canvas Fabricators v. William E. Hooper & Sons Co., 199 F.2d 485 (7th Cir. 1952); Kesler v. Schetky Equipment Corp., 200 F.Supp. 678 (N.D.Calif.1961); cf. Shahmoon Industries, Inc. v. Imperato, 338 F.2d 449 (3d Cir. 1964); Walker v. United States Gypsum Co., 270 F.2d 857 (4th Cir. 1959).

McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1936).[23] We find sufficient evidence in the affidavits from which the District Court could properly find the facts as it did. Unless these findings of fact are clearly erroneous, they must be upheld. Rule 52(a).

The decision of the District Court dismissing appellants' action is affirmed.

Affirmed.

---

**23.** Canvas Fabricators v. William E. Hooper & Sons Co., 199 F.2d 485 (7th Cir. 1952); Fergus Motors v. Standard- Triumph Motor Co., 130 F.Supp. 780 (S.D.N.Y.1955).