## ARTIE W. GOLDMAN v. PARKLAND OF DALLAS, INC.

### No. 7018SC42

(Filed 1 April 1970)

1. **Process § 14— service of process — nonresident defendant — minimum contacts**

   A state court may acquire *in personam* jurisdiction over a nonresident defendant where the nonresident defendant has minimum contacts with the state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.

2. **Process § 14— service on nonresident — single contract made in this state**

   A single contract, when it is made or is to be performed in North Carolina, is sufficient to subject the nonresident corporation to suit in this state under G.S. 55-145(a)(1).

3. **Appeal and Error § 57— findings of fact — conclusiveness on review**

   Findings of fact are conclusive if supported by competent evidence, even though there is evidence contra.

4. **Process § 14— service on nonresident defendant — jurisdiction of state court — contract made in this state**

   In an action by a salesman, a resident of this state, against a nonresident manufacturer of dresses for breach of contract, the manufacturer is subject to the *in personam* jurisdiction of the courts in this state under the provision of G.S. 55-145(a)(1) giving the courts jurisdiction in any cause of action arising out of a contract made in this state, where there was evidence that the parties entered into preliminary negotiations in another state on the possibility of the salesman's acting as a representative of the manufacturer in the sale of its dresses; that the salesman later received a letter from the manufacturer stating the terms of the contract whereby the salesman was to represent the manufacturer; that the letter provided that "if the above is agreeable, please sign and return the original copy of the letter;" and that the salesman signed the letter in this state and mailed it back to the manufacturer.

5. **Process § 14— contract "made" in this state**

   For a contract to be made in this state, within the purview of G.S. 55-145(a)(1), it must be executed in this state; that is, the final act necessary to make it a binding obligation must be done in this state.

6. **Contracts § 2— offer by mail — mode of acceptance**

   An offer by mail, without more, carries with it an implied invitation to accept or reject the offer by mail.

APPEAL from *Collier, J.,* 8 September 1969 Civil Session of GUILFORD Superior Court.

This action was commenced on 10 March 1969. The plaintiff, in

his complaint, alleged the following facts: Plaintiff is a resident of Guilford County, North Carolina. Defendant is a Texas corporation with its principal office in Dallas and is engaged in the business of manufacturing and selling dresses. Sometime around 4 January 1968, the plaintiff and the defendant entered a written contract under which the plaintiff agreed to act as a manufacturer's representative for the defendant in the sale of defendant's dresses in certain states in the Southeastern region of the United States. The contract between the parties was to be for a period of one year commencing 4 January 1968 and terminating 3 January 1969. Compensation under the contract was to be by a commission on the sales of defendant's merchandise with a minimum "draw" of $250.00 per week. Other terms of the contract were as follows:

"4.  Responsibility towards samples.

"A.  All samples will be billed to the salesman at one-half (½) the cost price.

"B.  After a style is taken out of the line, the salesman does not return the style to the company but sends his check for one-half (½) the cost price (the amount that he has been billed) and at this point the sample becomes the property of the salesman to dispose of as he sees fit.

"C.  After you have received your bulletin about a style being taken out of the line, your personal check must be forwarded to the company within a two-week period. If the amount of the samples taken out of the line in one week exceeds $100 at half-price, we will accept a post dated check or several post dated checks if you should happen to be short of funds, but these checks should not be post dated for more than one month from the date of the bulletin. The check must be attached and returned with the out bulletin showing styles removed from the line.

"D.  All checks written for payment of samples must be noted with the bulletin date samples are taken out of the line and all checks and correspondence on this should be marked to the attention of Wanda Dantzler.

"E.  If a salesman's sample account is not up-to-date at the end of a season or when a new season's samples are ready to ship, the new line will not be sent and we will discontinue the salesman's draw and/or commission overage.

"F. If a salesman leaves our employment or is released by the company, he has the privilege of returning the line or sending his check for one-half the cost price. If these samples are not accounted for within a two-week period from termination date, he is responsible for the samples at full cost price.

"5. We will deduct from your commission checks any direct charges incurred by you, phone calls, buyers gifts, etc., etc. Commissions are payable about ten (10) days after each calendar month, for the preceding month. The rate of commission is seven percent (7%) on all goods delivered into your territory, as hereafter set forth and with the exceptions hereafter mentioned. Commissions will be figured on the gross, that is before discount but after returns and allowances.

"6. We shall have the option of accepting or rejecting any order taken by you, and no commission shall be payable hereunder except on goods shipped by us and received and accepted by the purchaser, provided we guarantee to pay you commission on a minimum of seventy (70%) per cent of accepted orders whether shipped or not.

"7. You will have complete territorial rights in your territory, as hereafter indicated, with the exceptions mentioned below.

"8. You will get no credit on delivery of merchandise in your territory to chain stores, particularly J. C. Penney Company, Inc.; Sears-Roebuck; and Montgomery Ward. Any merchandise you may sell these chains will be specifically subject to refusal by us if we do not consider the business desirable. You will get no credit on close-out special sales to any account unless made by you. Occasionally, we do not pay seven (7%) per cent on certain items in the line. You will be advised specifically about these whenever same are turned over to you for sale. At present the entire line carries a full seven (7%) per cent commission.

"9. You will get credit for merchandise delivered into territory other than your own provided there is no other salesman in the particular territory, and provided you have sold the merchandise involved.

"10. At present we have no New York office, but if we should open one and anything is sold for your territory by our New York office, you will have the right to turn down the order. If

you accept it, you will receive one-half the regular commission on merchandise involved against such order, but will receive full commission on re-orders.

"11.   Your territory is as follows: Kentucky, West Virginia, Virginia, North Carolina, South Carolina, Alabama, Georgia, and Florida.

"If the above is agreeable, please sign and return the original copy of this letter.

"Sincerely,

"PARKLAND OF DALLAS, INC.

                    AGREED AND ACCEPTED

"IRA ORENSTEIN            ARTIE W. GOLDMAN
   Ira Orenstein          Artie Goldman
   Vice President"

The complaint further alleges that the plaintiff entered the performance of the contract in accordance with its terms but that in June, 1968, the defendant attempted to terminate the contract by letter dated 20 June 1968 as follows: "In view of this, and since sales are still quite discouraging, I know that you will agree to return the line at the end of this month, and will no longer represent us in the Southeast." The plaintiff alleges that he attempted to continue to represent the defendant under the contract but that the defendant made such further representation impossible by refusing to recognize the plaintiff's representation. The plaintiff contends that the termination of the contract by the defendant and its refusal to recognize his performance thereunder constituted a breach of the contract by the defendant and that as a result of the said breach the plaintiff has suffered damages in the amount of $7,000.00.

Service of summons on the defendant was had by service on the Secretary of State of North Carolina in conformance with the provisions of G.S. 55-144 through G.S. 55-146.

On 13 May 1969, the defendant, by a special appearance, filed a motion to dismiss and to quash summons and to set aside the attempted service of summons on the ground that the court had not acquired jurisdiction over the defendant because the defendant was a foreign corporation which was not doing business in North Carolina, the contract out of which the plaintiff's cause of action arises was not made in North Carolina and there was no substantial performance under the contract in North Carolina. Attached to the motion to dismiss was the affidavit of Ira Orenstein, Vice President

of the defendant corporation, in support of the motion. On 19 September 1969, the plaintiff filed affidavits of Artie W. Goldman, Mrs. Artie W. Goldman and Mr. Leonard Smoler dealing with the circumstances surrounding the making of the contract and the business activities of the defendant in North Carolina.

The court considered the verified complaint and the affidavits filed by the parties and made the following findings of fact and conclusions:

"1.   That the conversations between the plaintiff and the defendant's agent at the Atlanta Merchandise Mart the latter part of October, 1967, were preliminary negotiations looking toward the entry into a future contract; that the conversations constituted neither an offer nor an acceptance of the terms of the contract attached to the Complaint as Exhibit 'A'.

"2.   That the contract, Exhibit 'A', when forwarded by the defendant to the plaintiff in Greensboro for execution, constituted an offer to the plaintiff to enter into a contract upon the terms therein set forth; and that the said offer was accepted by the plaintiff in Greensboro, North Carolina, by his signature thereto, and the same became a binding contract between the parties at the time the accepted offer was placed in the United States mails in Greensboro, North Carolina.

"Upon the foregoing findings of fact the Court concludes that the contract, an alleged breach of which is the subject of this action, was made in North Carolina. And thereupon it is

"ORDERED that the defendant's motion to quash the service of process upon it and to dismiss this action be, and it is hereby denied.

"FURTHER ORDERED that the defendant is allowed 30 days from the date of this order within which to file responsive pleadings.

"At Greensboro on 22nd September, 1969.

"ROBERT A. COLLIER, JR.
"Judge Presiding"

To the order of the court overruling the defendant's motion to dismiss the action for lack of jurisdiction, the defendant excepted and gave notice of appeal to the North Carolina Court of Appeals.

*Smith, Moore, Smith, Schell and Hunter, by Harold N. Bynum, Attorneys for the defendant appellant.*

*John R. Hughes and Harry Rockwell for the plaintiff appellee.*

HEDRICK, J.

The only question raised by the appellant on this appeal is whether the court erred in denying appellant's motion to dismiss in that the North Carolina courts do not have jurisdiction over the person of the defendant.

The North Carolina long arm statute, G.S. 55-145(a)(1), under which the appellee obtained service of process on the appellant, is as follows:

"(a)   Every foreign corporation shall be subject to suit in this State, by a resident of this State or by a person having a usual place of business in this State, whether or not such foreign corporation is transacting or has transacted business in this State and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising as follows:

"(1)   Out of any contract made in this State or to be performed in this State; or . . . ."

[1]   G.S. 55-145(a) is applicable to foreign corporations which are not transacting business in North Carolina but who come within the purview of any one of the four specific and well-delineated areas listed therein. A State court may acquire *in personam* jurisdiction over a nonresident defendant under principles established by the United States Supreme Court where the nonresident defendant has "minimum contacts" with the State such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945); *McGee v. International Life Ins. Co.,* 355 U.S. 220, 78 S. Ct. 199, 2 L. Ed. 2d 223 (1957). The decision reached by the Supreme Court in *International Shoe, supra,* marked a substantial departure from the prior standards of "consent", "doing business" and "presence" which were used to measure the permissible extent of judicial power over corporations. *McGee, supra.* The highwater mark was reached in the *McGee* case, *supra,* where the United States Supreme Court, in a unanimous decision, held that the tests laid down in *International Shoe, supra,* had been met even though there was but a single transaction which gave rise to the suit. To our knowledge the United States Supreme Court has not decided whether a single act, other than an insurance contract, or a single tort, will be sufficient to render a nonresident corporation subject to the jurisdiction of a State court.

The North Carolina Supreme Court, on the single occasion it has had to consider the statute here involved, stated in *Byham v. National Cibo House Corp.,* 265 N.C. 50, 143 S.E. 2d 225 (1965):

"A number of states have statutes similar to N.C.G.S. 55-145(a)(1). [In the judgment below the court inadvertently referred to this statute as G.S. 55-145(1)]. These statutes generally provide that where the cause of action arises out of a contract with a foreign corporation, made in the forum state or to be performed in whole or in part in such state, an action *in personam* may be maintained in the forum state, upon substituted service of process. In no instance has such statute been declared unconstitutional. (Citations omitted)."

**[2]** Clearly, this language indicates that our Supreme Court believes that a single contract, where it is made or to be performed, in North Carolina, is sufficient to subject the nonresident corporation to suit in North Carolina under G.S. 55-145(a)(1).

The appellant seeks to distinguish the present case from *Byham, supra,* and from *Bowman v. Curt G. Joa, Inc.,* (4th Cir. 1966), 361 F. 2d 706. It should be pointed out that neither of these cases involved a contract which was made in North Carolina but that in both instances the court found that the contract involved was made in another state. In the *Byham* case, *supra,* the court found that the contract in question was to be performed in North Carolina and, therefore, had a substantial connection with this state. In *Bowman, supra,* however, the Fourth Circuit held that a conditional sales contract was not to be performed in North Carolina and was not within the provisions of G.S. 55-145(a)(1).

The appellant also contends that the contract involved in this case did not have the requisite "minimum contacts" with this state to subject it to *in personam* jurisdiction. The appellant cites the cases of *Erlanger Mills v. Cohoes Fibre Mills,* (4th Cir. 1956), 239 F. 2d 502; *Shepard v. Manufacturing Co.,* 249 N.C. 454, 106 S.E. 2d 704 (1959); *Putnam v. Publications,* 245 N.C. 432, 96 S.E. 2d 445 (1957); and *Golden Belt Manufacturing Co. v. Janler Plastic Mold Corp.,* (M.D.N.C. 1967), 281 F. Supp. 368, aff'd (4th Cir. 1968), 391 F. 2d 267, in support of his contention. The appellant is correct in his statement that these cases stand for the proposition that substantial contacts are required to bring the appellant within G.S. 55-145(a); however, we do not agree that this standard is applicable to the present case. G.S. 55-145(a)(1) confers jurisdiction upon our courts when the contract is made or to be performed in North Carolina; therefore, where it is found that the contract was made in North Carolina or was to be performed in North Carolina, a sufficiently substantial contact to confer jurisdiction on the North Carolina courts has been established.

GOLDMAN v. PARKLAND

**[3, 4]**   Thus, the essential question for decision is whether the findings of fact made by Judge Collier support his conclusion that the contract was made in North Carolina. It is established law that findings of fact are conclusive if supported by competent evidence even though there is evidence contra. *Farmer v. Ferris*, 260 N.C. 619, 133 S.E. 2d 492 (1963). Judge Collier heard the appellant's motion upon affidavits offered by the parties. The affidavit of Ira Orenstein was to the effect that the written contract between plaintiff and defendant was made and arranged by the affiant in Atlanta, Georgia, in November, 1967, where he and the plaintiff orally agreed to the terms of the contract and that the written agreement was used merely to confirm the oral agreement, and that upon his return to Dallas, Texas, he prepared a letter agreement which he placed in the mail to be delivered to the plaintiff for his signature. The affidavit further states that the agreement was not to be performed in North Carolina and that the plaintiff was present in Dallas sometime in March, 1968, at which time the parties, by mutual consent, decided they would terminate their agreement as of 30 June 1968.

In response to the affidavit filed by defendant, the plaintiff filed three affidavits. The affidavit of Artie W. Goldman was to the effect that while he was in Atlanta, Georgia, in late October and early November, 1967, as a representative of Smoler Brothers of Chicago, Illinois, he was approached by Orenstein and that Orenstein talked with him regarding the possibility of Goldman undertaking to represent Parkland of Dallas, Inc. His affidavit states that he told Orenstein that he was not very interested in adding another line but that in the event he did decide to represent Parkland he would consider no offer of less than $250.00 per week. His affidavit further states that this was the full extent of his conversation with Orenstein and that nothing was discussed concerning the matters in the contract in paragraph 4, sections A, B, C, D, E, or F, or in paragraphs 5 or 6. He further stated in his affidavit that he received the letter from the defendant sometime later and that the discussion they had had in Atlanta, Georgia, had been completely forgotten by him but that he discussed the offer with Smoler Brothers and decided to accept the defendant's offer and that he signed the letter and mailed it back to the defendant. The affidavits of Mrs. Artie W. Goldman and Leonard Smoler of Smoler Brothers, tended to corroborate and substantiate the affidavit offered by the plaintiff.

**[4-6]**   For a contract to be made in North Carolina, it must be executed in North Carolina, that is, "the final act necessary to make it a binding obligation must be done in the forum state." *Bowman*

*v. Curt G. Joa, Inc., supra; Byham v. National Cibo House Corp., supra; Bundy v. Commercial Credit Co.,* 200 N.C. 511, 157 S.E. 860 (1931). The final act in the present case which was necessary to make the agreement a binding obligation, and therefore, a contract, was the depositing of the letter containing the signature of Artie W. Goldman in the mail. An offer by mail, without more, carries with it an implied invitation to accept or reject the offer by mail. *Board of Education v. Board of Education,* 217 N.C. 90, 6 S.E. 2d 833 (1940). The offer in the present case, however, far exceeded the rule laid down in the *Board of Education* case, *supra.* The letter from Parkland of Dallas, Inc., to Artie W. Goldman contained the following sentence: "If the above is agreeable, please sign and return the original copy of this letter." By its own terms the appellant established the method by which appellee could accept its offer.

The findings of fact, which are supported by competent evidence, support Judge Collier's conclusion of law and his order. We hold that the Superior Court of Guilford County has jurisdiction over Parkland of Dallas, Inc., for the purpose of the maintenance of this suit by virtue of the provisions of G.S. 55-145(a)(1). The order of the court below is

Affirmed.

CAMPBELL and PARKER, JJ., concur.