**McCOY LUMBER INDUSTRIES, INC., Plaintiff,**

v.

**NIEDERMEYER–MARTIN CO., Defendant.**

**No. C–249–G–72.**

United States District Court,
M. D. North Carolina,
Greensboro Division.

March 1, 1973.

William Zuckerman, of Forman, Zuckerman & Graham, Greensboro, N. C., for plaintiff.

Hubert B. Humphrey and John L. Sarratt, of McLendon, Brim, Brooks, Pierce & Daniels, Greensboro, N. C., for defendant.

## MEMORANDUM OPINION

GORDON, Chief Judge.

The plaintiff, McCoy Lumber Industries, Inc. (McCoy), a North Carolina corporation, originally instituted this action on July 21, 1972, in the North Carolina Superior Court for Guilford County against the defendant, Niedermeyer-Martin Company (Niedermeyer), an Oregon corporation. Service of process was made on the defendant by service of a copy of the summons and a copy of the complaint upon an officer of the defendant corporation in Portland, Oregon by the Sheriff of Multnomah County, Oregon. On August 24, 1972, the defendant petitioned for removal of the case to this Court on the basis of diversity jurisdiction.

Before answering and pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, the defendant moved to dismiss for lack of jurisdiction over the person of the defendant by reason of insufficient service of process. Paragraph four of the plaintiff's complaint claims jurisdiction over the defendant pursuant to the provisions of N.C.G.S. 1–75.4 (5)(a) and (c), but this sentence of the complaint was subsequently amended by the plaintiff to read N.C.G.S. 1–75.4 (5)(a) and (d). The defendant contends that these sections are not applicable to the facts of this case, and further, that if applicable, they are unconstitutional in this factual situation because the application of the statute would deprive the defendant of his property without due process of law in violation of the Fourteenth Amendment.

After careful consideration and study of the defendant's motion to dismiss and the briefs and affidavits filed in support and opposition to the motion, the Court is of the opinion, and so finds, that the service of process was proper and that this Court has jurisdiction over the person of the defendant, and therefore the defendant's motion to dismiss is denied.

The defendant, Niedermeyer, lists Portland, Oregon as its principal and only place of business where it is engaged in the business of selling forest products. The plaintiff, McCoy, has its main office in Greensboro, North Carolina, and is engaged in the wholesale lumber business. McCoy maintains inventories of lumber and forest products, operates sawmills, and employs lumber inspectors, buyers and salesmen for sales made to retail lumber dealers, industrial lumber users, general contractors and lumber wholesalers and brokers. It is apparently conceded by the plaintiff that Niedermeyer is not licensed to do business in North Carolina nor has it engaged in any of the usual practices associated with doing business in North Carolina. The only contact with North Carolina by Niedermeyer was by mail and telephone over the purchase of lumber from the plaintiff.

The affidavit of Harold V. McCoy, President of the plaintiff corporation, states that he has done business with the defendant since 1961 but does not state how much or how often. In January of 1972 the defendant contacted the plaintiff in its Greensboro office and inquired whether the plaintiff could furnish the defendant with lumber supplies which the defendant planned to turn into bowling alleys to be shipped to Japan. Over a five month period, the plaintiff states that it received an estimated 50 person-to-person calls from the defendant concerning the furnishing of Southern Yellow Pine which would be supplied from North Carolina sources and Northern Hard Maple which the plaintiff would obtain through its buyers from Pennsylvania, Wisconsin, and New York. In February, 1972, the defendant sent by mail the first of six purchase orders to the plaintiff. A total of 168,490 board feet of maple was shipped to the defendant by the plaintiff at the invoice amount of $124,728.12; and a total of 107,134 board feet of pine was shipped at a cost of $34,818.56. The defendant points out that only 38.9 per cent of the total board feet was actually shipped from North Carolina and that a substantial amount of the contract was performed outside of North Carolina.

The plaintiff claims there is a balance of $130,976.08 still owing on the purchases and this suit was instituted to recover that amount. The defendant has moved to dismiss the North Carolina action on grounds of lack of personal jurisdiction. In jurisdictional disputes of this nature the Court must decide two questions: Does the defendant's activity come under the provisions of N.C.G.S. 1–75.4(5)(a) and (d), and if it does, would the statute's application in this factual situation violate the defendant's due process rights under the Fourteenth Amendment?

A close reading of N.C.G.S. 1–75.-4(5)(a) and (d), convinces the Court that the defendant's activity in this state would at least bring the defendant within the ambit of section (d) and probably under section (a). The statute provides jurisdiction over a person properly served in an action which:

"(a) Arises out of a promise, made anywhere to the plaintiff or to some third party for the plaintiff's benefit, by the defendant to perform services within this State or to pay for services to be performed in this State by the plaintiff; or

"(d) Relates to goods, documents of title, or other things of value shipped from this State by the plaintiff to the defendant on his order or direction. . . ."

Certainly the shipment of lumber from this state would fall under the definition of goods or other things of value in sec-

tion (d), and since this statute has no relation to the performance of contracts, the fact that only part of the defendant's orders were filled in North Carolina is irrelevant.

If the plaintiff were just selling lumber to the defendant, it is doubtful that jurisdiction could be asserted under section (a) which deals with the performance of services within this state. However, according to the affidavit of Harold V. McCoy, the agreement with the defendant involved more than just providing lumber. The affidavit states that the plaintiff's employees not only procured and produced the lumber, but they also inspected the lumber, had it kiln-dried and then shipped it to the defendant. The plaintiff contends that the contract included these services, and according to the affidavit of Thomas J. Niedermeyer, the defendant does not have the facilities to perform some of these operations. Therefore, based on these limited facts, the Court is of the opinion that the defendant's activities also come under section (a).

The more difficult question facing the Court is whether the defendant's activity in North Carolina meets the "minimum contact" rule required by due process as set out in International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The defendant has cited to the Court several cases in which various courts have dismissed complaints because the defendant had not had sufficient contact with the forum state to warrant that state assuming jurisdiction over the defendant. These cases, however, can be distinguished from the instant fact situation.

In Putnam v. Triangle Publications, Inc., 245 N.C. 432, 96 S.E.2d 445 (1957), the North Carolina Supreme Court held that a publisher of a detective magazine was not subject to a libel suit in North Carolina where the magazine was circulated by independent contractors in North Carolina. Legal title and ownership passed from the publisher to the independent contractors when the maga-

zines were delivered to a common carrier in a foreign state. The Court held that the defendant's contact with North Carolina had been "casual, incidental and insubstantial" and therefore not sufficient under traditional concepts of fair play and substantial justice to submit the defendant to suit in North Carolina.

One of the leading cases in this area of the law is Erlanger Mills v. Cohoes Fibre Mills, 239 F.2d 502 (4th Cir. 1956), and it too involves a North Carolina plaintiff trying to sue an out-of-state defendant. One of the plaintiff's representatives went to the defendant in New York and purchased goods to be shipped to North Carolina. This single transaction was the defendant's only contact with North Carolina, and when the plaintiff brought suit because some of the goods were defective, the case was dismissed because the defendant was not doing business and was not present in North Carolina. In affirming the district court, the Fourth Circuit Court of Appeals held that a single interstate shipment was not sufficient contact to sustain jurisdiction.

The *Erlanger Mills* decision has been criticized for its apparent reliance on the more conventional test of doing business in the forum state than the minimum contacts of the defendant with the state, Williams v. Connolly, 227 F.Supp. 539, 547 (D.Minn.1964), Wisconsin Metal & Chemical Corp. v. DeZurik Corp., 222 F.Supp. 119, 123 (E.D.Wis.1963), but even so, the factual situation of the instant case is different from that in *Erlanger Mills*. In *Erlanger Mills* the plaintiff approached the defendant at the defendant's place of business, consummated the sale there, and the goods were shipped f. o. b. New York, but in the instant case, the defendant contacted the plaintiff by telephone at the plaintiff's place of business in North Carolina and over a period of five months conducted extensive communications with the plaintiff. There was not just one interstate shipment, but a total of six purchase orders from the defendant, and the lumber was sent f. o. b. North Caro-

lina or other place of shipment. These facts would seem to raise the defendant's activity above the single interstate shipment that occurred in *Erlanger Mills*.

The case of Chassis-Trak, Inc. v. Federated Purchaser, Inc., 179 F.Supp. 780 (D.N.J.1960) is much closer to the fact situation of the instant case. In this case an Indiana plaintiff was awarded a judgment in the Indiana state court against a New Jersey defendant as a result of the defendant's ordering a shipment of goods from the plaintiff and not paying for them. The Indiana judgment was taken to New Jersey but the federal district court for New Jersey declared the Indiana judgment void for lack of jurisdiction. The district court relied heavily on the *Erlanger Mills* case and in fact the court stated that it "feels bound to adopt the limitation of the International Shoe doctrine expressed in the *Erlanger Mills* case" and the court then quoted the *Erlanger Mills* decision concerning the single interstate shipment.

This Court is of course not bound by the *Chassis-Trak* decision and would not be bound anyway since its reliance on *Erlanger Mills* is an indication that it is distinguishable from the instant case. There was just the one interstate shipment which resulted from a single telephone call from the New Jersey defendant and the follow-up purchase order. The affidavit of Harold V. McCoy states that after "numerous telephone calls" he received the defendant's first order. There was a total of six purchase orders which distinguished the instant case from the cases involving a single interstate shipment.

One final feature that distinguishes the *Erlanger Mills* case and the *Chassis-Trak* case from the instant case is the amount of money involved in this dispute. As is stated in *Erlanger Mills*, the bounds of due process cannot be staked out by the amount of the controversy, but in some circumstances the amount may be pertinent. The sum involved in *Erlanger Mills* was $17,000.00, and in *Chassis-Trak* the Indiana judgment was for $11,592.15, but in the instant case, the plaintiff is trying to recover $130,976.08. This figure may not automatically establish the minimum contacts required by due process of law, but it graphically illustrates the size and dimension of the transaction that the defendant initiated with the plaintiff.

After a lengthy review of the leading United States Supreme Court cases dealing with the problem of what is minimum contact, Judge Blackmun (now Justice Blackmun) commented in Aftanase v. Economy Baler Company, 343 F.2d 187 (8th Cir. 1965), that these cases establish only general principles and not precise guidelines, but he further stated:

"We observe, however, that, at one time or another in the opinions, three primary factors, namely, the quantity of the contacts, the nature and quality of the contacts, and the source and connection of the cause of action with those contacts, are stressed, and that two others, interest of the forum state and convenience, receive mention." 343 F.2d at 197.

Applying this criteria to the facts before this Court, it is noted that the plaintiff alleges through affidavit that over a five-month period the plaintiff received "perhaps 50 person-to-person calls" from Linus J. Niedermeyer, a vice president of the defendant. From the affidavit of Thomas J. Niedermeyer, a vice president and corporate secretary of the defendant corporation, the Court is informed that the lumber was purchased "under six separate written orders." As already stated, the six different orders removes the case from the single shipment category of the *Erlanger Mills* case, but more important, the quantity of the contacts can hardly be considered insignificant or casual.

The Court also finds the element of quality present in the defendant's contact with North Carolina. The defendant places a great deal of importance on the fact that a substantial part of the lumber was supplied from sources other than North Carolina and that the lumber actually shipped from North Carolina amounted to only 38.9 per cent of the total order. The total order that the defendant placed with the plaintiff was 275,624 board feet of lumber at an invoice price of $159,546.68, and even though the portion actually shipped from North Carolina is only 38.9 per cent of the total order, the 38.9 per cent still amounts to 107,134 board feet at an invoice price of $34,818.56. If the Court ignored the rest of the contract and looked only at the amount shipped from North Carolina, it could hardly be called insubstantial in either amount or cost.

The source of this cause of action stems from the defendant's alleged refusal to pay the balance owing on the lumber shipments. The defendant voluntarily, it is contended, sought out the plaintiff, negotiated the sale, and placed orders with the plaintiff. Again, this type of action is different from the unilateral action of the plaintiff in *Erlanger Mills* where the plaintiff went to New York and sought out the defendant.

And finally, North Carolina has an interest in providing a forum for its residents to try to collect alleged obligations owing to them. This interest would seem to be as compelling as any interest Oregon has in litigating the issues. The question of convenience seems to be equally divided; the defendant claims to have witnesses in Oregon who will be needed to testify as to the condition of the shipments, but the plaintiff likewise contends that it has witnesses in North Carolina, Ohio, Pennsylvania and New York who will be called to testify.

The Court concludes that the facts of this case meet the criteria set forth in the *Aftanase* case and further, the rule of Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958) is met. In *Hanson* the court stated:

> "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." 357 U.S. at 253, 78 S.Ct. at 1239.

In the instant case there was no unilateral activity by the plaintiff; the defendant acted unilaterally in seeking out the plaintiff. The defendant's repeated calls and inquiries to the plaintiff and the six purchase orders sent to the plaintiff certainly constitute acts by which the defendant sought the privilege of conducting activities in North Carolina.

Therefore, the Court finds the service of process under N.C.G.S. 1–75.4(5)(a) and (d) was proper and that the defendant's activity in this State comes within the purview of that statute. The Court further finds that the statute's application in this factual situation is consistent with fair play and substantial justice and does not violate the defendant's due process rights under the Fourteenth Amendment.

Accordingly, an order will be entered.