UNITED ADVERTISING AGENCY,
INC., Plaintiff,

v.

Mark ROBB, d/b/a Jero Enterprises,
et al., Defendants.

No. C-74-349-WS.

United States District Court,
M. D. North Carolina,
Winston-Salem Division.

March 20, 1975.

William H. Freeman, Winston-Salem, N. C., for plaintiff.

Larry B. Sitton, Greensboro, N. C., for defendants except Mark Robb, D/B/A Jero Enterprises.

## MEMORANDUM OPINION

GORDON, Chief Judge.

The plaintiff, an advertising agency in Winston-Salem, North Carolina, instituted this action November 1, 1974, in the Middle District of North Carolina, to recover $15,217.66, the alleged value of advertising services rendered and expenses incurred pursuant to an alleged contract with Jero Enterprises, a Kansas Corporation, and seven individual defendants. These individual defendants, all citizens of Kansas and Missouri are alleged to be members of the Mo-Kan Tastee Freeze Advertising Co-Op Committee at whose request the plaintiff performed the advertising services. The plaintiff claims it has made repeated demands for payment of the $15,217.66 but that such demands have been ignored or refused.

On December 12, 1974, a request for entry of default against Jero Enterprises for its failure to plead was filed accompanied by an affidavit in accord with Rule 55(a). Entry of default was entered and, after filing of an affidavit of the amount due, judgment of default for $13,547.80 was entered by the Clerk of Court on the grounds that Jero Enterprises failed to appear, plead or otherwise defend in the time allowed by the Federal Rules.

The individual defendants jointly filed a motion to dismiss on November 27, 1974, asserting two grounds, lack of *in personam* jurisdiction and failure to state a claim for relief. The Court will turn first to a consideration of the jurisdictional issue.

This issue of *in personam* jurisdiction has been before this and many other courts in many instances but not in the same posture as the issue arises here. Nevertheless, the approach to resolution of the issue here is the same. The Court must first determine if the applicable state law would allow the exercise of *in personam* jurisdiction and, if the answer to this inquiry is yes, the Court must then determine if the exercise of the jurisdiction in this case comports with due process. Bowman v. Curt G. Joa, Inc., 361 F.2d 706 (4th Cir. 1966); Munchak Corp. v. Riko Enterprises, Inc., 368 F.Supp. 1366 (M.D.N.C.1973).

The parties agree that the initial inquiry focuses on § 1–75.4(5) of the North Carolina long-arm statute. This section provides:

"§ 1–75.4. *Personal jurisdiction, grounds for generally.*—A court of this State having jurisdiction of the subject matter has jurisdiction over a person served in an action pursuant to Rule 4(j) of the Rules of Civil Procedure under any of the following circumstances:

\* \* \* \* \* \*

"(5) Local Services, Goods or Contracts.—In any action which:

"a. Arises out of a promise, made anywhere to the plaintiff or to some third party for the plaintiff's benefit, by the defendant to perform services within this State or to pay for services to be performed in this State by the plaintiff; or

"b. Arises out of services actually performed for the plaintiff by the defendant within this State, or services actually performed for the defendant by the plaintiff within this State if such performance within this State was authorized or ratified by the defendant; or

"c. Arises out of a promise, made anywhere to the plaintiff or to some third party for the plaintiff's benefit, by the defendant to deliver or receive within this State, or to ship from this State goods, documents of title, or other things of value; or

"d. Relates to goods, documents of title, or other things of value shipped from this State by the plaintiff to the defendant on his order or direction; or

"e. Relates to goods, documents of title, or other things of value actually received by the plaintiff in this State from the defendant through a carrier without regard to

where delivery to the carrier occurred."

The defendants contend that the advertising services which form the basis of the contract in issue consisted of advertising to be done exclusively in the Missouri/Kansas area and that neither the complaint nor the record indicates that any advertising services were to be performed or paid for in North Carolina. While conceding that the plaintiff may have prepared some of the advertising material in its home office in North Carolina, defendants claim this was only incidental to the contract which consisted of advertising services to be performed in Missouri and Kansas.

In response, plaintiff argues that the contract was substantially performed in North Carolina in that all of the preparation, design and development of the advertising services were performed in North Carolina and the end product, the advertising services, then sent to Kansas. Further plaintiff contends that the services were to be paid for in North Carolina.

Whether the contract and its performance established jurisdiction under G.S. § 1–75.4(5)(a), (b) or (d), the only conceivably applicable provisions, raises a very thorny issue of statutory construction. While the Court views this determination as difficult, it must give considerable deference to the North Carolina courts in the interpretation of the North Carolina long-arm statute.

These interpretations of § 1–75.-4(5)(a) and (b) have been rather liberal and mandate an answer of yes to the first inquiry. Particularly apposite is First-Citizens Bank and Trust Co. v. McDaniel, 18 N.C.App. 644, 197 S.E.2d 556 (1973) which held that a single contract executed in North Carolina or to be performed in North Carolina may be a sufficient minimal contact upon which to base *in personam* jurisdiction. Asserting that § 1–75.4 is a legislative attempt to exercise *in personam* jurisdiction over nonresident defendants to the full extent permitted by the due

process clause, *First-Citizens* held that the lending of money on a note conditionally guaranteed by a non-resident defendant is a service performed within this state for the non-resident defendant and subjects the non-resident to jurisdiction here. 197 S.E.2d at 558.

Earlier North Carolina cases decided under G.S. § 55–145(a)(1), the statute concerning jurisdiction over foreign corporations, lead to the same conclusion. These cases are relevant since the language of § 55–145(a)(1) is similar to § 1–75.4(5)(a) and (b) in providing for jurisdiction over a cause of action arising out of any contract made or to be performed in this State. In Byham v. Nat'l Cibo House Corp., 265 N.C. 50, 143 S.E.2d 225 (1965), the North Carolina Supreme Court held that while the contract sued on was executed in Tennessee, it was to be substantially performed in North Carolina and so jurisdiction over the non-resident defendant was upheld. 143 S.E.2d at 233. *See also* Goldman v. Parkland of Dallas, 7 N.C.App. 400, 173 S.E.2d 15 (1970), aff'd, 277 N.C. 223, 176 S.E.2d 784 (1970).

This Court has also accepted the rule that the provisions of the "long-arm" statute are to be liberally construed in favor of finding personal jurisdiction. *Munchak*, referred to an interpretation of G.S. § 1–75.4, and stated:

"Accordingly, there is no need to engage in a laborious analysis of the meanings of the key terms in the two alternative requirements in the provisions set forth in § 1–75.4(4). To strictly construe the terms as set forth in those subsections so as to defeat in personam jurisdiction when such jurisdiction would be constitutionally permissible would conflict with the legislative and judicial mandate." 368 F.Supp. at 1371.

Giving full consideration to the plaintiff's contention that a substantial part of the advertising services were performed in North Carolina, the authoritative construction of the North Carolina

courts of the long-arm statutes and the all-encompassing language of §§ 1–75.-4(5)(a) and (b), it is concluded that the applicable state law would allow the exercise of personal jurisdiction over the individual defendants in this case.[1]

This brings us to the second inquiry of whether the exercise of jurisdiction comports with due process. The parties again agree on the standard to be applied—the "minimum contacts" test set forth in Internat'l Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

> "[D]ue process requires only that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" 326 U.S. at 316, 66 S.Ct. at 158.

The natural starting point for analysis is an evaluation of the contacts of the nonresident defendants with North Carolina. The plaintiff contends that the individual defendants, acting as a co-operative group to procure advertising services, directly contracted with the plaintiff for provision of such services. Plaintiff argues that the defendants knew that plaintiff was a North Carolina corporation, intended that the plaintiff would do substantial work at his office in North Carolina in relation to the advertising services and agreed that plaintiff would purchase and pay for advertising time and space in Kansas and that defendants would reimburse the plaintiff in North Carolina.

The defendants sharply contest many of these factual assertions and view the degree of contact with the North Carolina plaintiff in a different light. They contend that, as franchisees of Mo-Kan,

their only activity was to advise Mo-Kan as to needed advertising services, that Mo-Kan itself and not the individual defendants, contracted for the advertising services, that none of the defendants ever went to North Carolina or had any business contacts in North Carolina. The extent of their relationship to plaintiff, they claim, was to review advertising material which plaintiff prepared to use for Mo-Kan.

Before analyzing the nature and quality of these contacts, it should be mentioned that the record and briefs of the parties do not disclose several facts which would be relevant to the resolution of this issue. There is no indication of where the contract was made, or of the nature or location of the negotiations leading up to its execution or of the initial steps leading up to this business transaction. The Court is faced with a history of facts which begins near the end of this business transaction and is left ignorant of the events leading up to this point. This makes the decision exceedingly difficult because considerations of the place of execution of the contract and the negotiations and events leading to the contract have often been decisive in determining whether jurisdiction will comport with due process.

In McCoy Lumber Industries, Inc. v. Niedermeyer-Martin Co., 356 F.Supp. 1221 (M.D.N.C.1973), this Court adopted the general principles set forth by Justice Blackmun in Aftanase v. Economy Baler Co., 343 F.2d 187 (8th Cir. 1965) as a framework for ascertaining whether minimum contacts are present. These criteria include:

> "[T]hree primary factors, namely, the quantity of the contacts, the nature and quality of the contacts, and the source and connection of the cause of action with those contacts . . . and . . . two others, interest of

---

1. There is an argument pressed by defendants, on the issue of failure to state a claim for relief, that the plaintiff never contracted at all with the individual defendants, but that it contracted with Mo-Kan Enterprises, the franchisor of the franchises owned by

the individual defendants. This would not alter the decision on this first inquiry since the language of § 1–75.4(5)(a) concerning promises made by defendants to a third party for the plaintiff's benefit would permit jurisdiction even in this factual setting.

the forum state and convenience . . . ." 343 F.2d at 197.

The quantity of contacts which the individual defendants had with North Carolina were virtually non-existent, even accepting the plaintiff's version of the facts. At most, they consisted of an obligation for defendants to make a one-time payment to plaintiff for its advertising services, and the duty to review and approve materials prepared by plaintiff in North Carolina. There is no evidence that defendant made any repeated contact with North Carolina either with reference to the solicitation, negotiation, performance or implementation of the contract in issue or in relation to anything else.

As for the nature and quality of the contacts, the contract is alleged to be worth over $13,000.00, which while significant, does not manifest a transaction where size alone would indicate substantial contacts. Compare McCoy, 356 F. Supp. at 1225–26; Erlanger Mills v. Cahoes Fibre Mills, 239 F.2d 502 (4th Cir. 1956).

With respect to the source and connection of the cause of action here with the alleged contacts, whatever contacts exist between defendants and North Carolina were generated exclusively by the contract in issue which, it is contended, was substantially performed in North Carolina. This factor constitutes the heart of the due process issue in this case since plaintiff's position is best supported by cases in which the contacts generated by a single contract have been sufficient to sustain jurisdiction.

The leading case in support of finding one contract as a basis for minimum contacts is McGee v. Internat'l Life Ins., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957) in which the Supreme Court upheld California's jurisdiction over a Texas insurance company on the basis of a single insurance contract delivered to a California resident who mailed the insurance premiums from California and who died there. The Court found this single contractual transaction to have a substantial connection with California

and, therefore, jurisdiction comported with due process. Subsequent decisions which have based jurisdiction on a single contract have also found this "substantial connection." See, e. g., McCoy, 356 F.Supp. 1221 (M.D.N.C.1973); Goldman v. Parkland of Dallas, Inc., 277 N.C. 223, 176 S.E.2d 784 (1970); Byhan v. Nat'l Cibo House Corp., 265 N.C. 50, 143 S.E. 2d 225 (1965); First-Citizens Bank and Trust Co. v. McDaniel, 18 N.C.App. 644, 197 S.E.2d 556 (1973); Koppers Co. v. Chemical Corp., 9 N.C.App. 118, 175 S. E.2d 761 (1970). Compare Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); Bowman v. Curt G. Joa, 361 F.2d 706 (4th Cir. 1966); Golden Belt Manufacturing Co. v. Janler Plastic Mold Co., 281 F.Supp. 368 (M. D.N.C.1967).

This substantial connection has been defined alternatively as an intent by the non-resident to avail itself of the privilege of conducting activities within the forum state, a systematic or continual solicitation, advertisement or transaction of business in the forum state or the substantial performance of a contract in the forum state which by itself gives the non-resident minimum contacts. Staley v. Homeland, Inc., 368 F.Supp. 1344, 1349–50 (E.D.N.C.1974). Conversely, in those cases where these defined incidents of a substantial connection have been absent, courts have refused to find a single contract grounds for jurisdiction. For instance, this Court in Golden Belt refused to exercise jurisdiction in a breach of contract action over an Illinois corporate defendant which had never solicited, advertised or transacted business in North Carolina and whose only contact with the State was a contract made and substantially performed outside North Carolina. Likewise, in Fabrics Unlimited, Inc. v. Cohen, C–308–G–73 (M.D.N.C.1974), this Court refused to exercise jurisdiction over a New York bank on the basis of a single, oral contract of guaranty in which the bank had no other North Carolina contacts even though the contract of guaranty would have been performed

in North Carolina. In that case as in all controversies where this issue has arisen, this Court has consistently refused jurisdiction on the grounds of a single contact when the contract giving rise to this contact had no substantial connection with North Carolina. *See Golden Belt, compare with McCoy; cf. Munchak Corp.* The Court has felt that this position is consistent with Hanson v. Denckla, in which the Supreme Court refused to uphold jurisdiction on the basis of a single contract executed outside the forum state although it was to be partially performed within the forum state:

> "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws. International Shoe Co. v. Washington." 357 U.S. at 253, 78 S.Ct. at 1239.

In the case at bar, the alleged connection of the contract sued on with North Carolina is that it was to be substantially performed here. However, this performance entailed only the unilateral activity of the plaintiff in developing those advertising services. There was no attempt by defendants to use or benefit from the laws of North Carolina; they had no intent to enter the North Carolina market or to advance their own position by contact with this State. The benefit to them from this contract was advertising services to be used in Missouri or Kansas; the fact that these services were prepared in North Carolina was immaterial, the services could have been prepared anywhere and the connection of North Carolina to this contract was truly incidental.

Consideration of the final two factors, interest of the forum state and convenience does not warrant a change in the decision to refuse jurisdiction. It is true that North Carolina has an interest in providing a forum for its residents to collect alleged obligations but it cannot be doubted that Kansas has an equal interest in having actions involving a contract with a truly substantial connection with that State being tried in their courts. As for convenience, the Court can only surmise that more witnesses will be from Kansas and Missouri than North Carolina. More importantly, this is not a situation like *McGee* in which an individual, non-business plaintiff would have been forced to bear the expense of long-distance litigation against a well-financed corporate defendant if jurisdiction was refused. Here the parties are all businessmen dealing at arms length and the refusal of jurisdiction would not offend "traditional notions of fair play and substantial justice."

This review of the primary factors and other considerations relevant to an ascertainment of minimum contacts clearly demonstrates that to exercise jurisdiction in this case would be a clear violation of the due process clause of the Fourteenth Amendment.

■ The plaintiff in response to defendants' motion raised the issue that with respect to defendants Carpenter, Dowd and Dalrymple, the motion to dismiss was not timely made in that it was filed more than twenty days after service of the complaint and summons. This is a technical violation of Federal Rule 12(a) since the response was two days late, but this Court has never refused to consider a substantial issue such as was raised by the motion because of a one or two day delinquency in complying with a strictly procedural rule. Blind insistance on compliance would be particularly inappropriate here because the defendants are distant from the forum and because the motion was filed jointly by seven defendants, four of whom were timely in making their response.

■ The plaintiff also contends that defendant Chet Posey waived the defense of lack of jurisdiction by filing an answer without any objection to juris-

diction before joining the other defendants in the motion to dismiss. Once again, technical compliance with Rules 12(g) and 12(h)(1) would mandate the conclusion that defendant Posey has waived the jurisdictional defense, but this breach of the Rules is excused since Posey's answer was filed *pro se* and, apparently, in order to come within the requirements of Rule 12(a) which is discussed above.

This conclusion that the exercise of in personam jurisdiction would not comport with due process obviates the need to consider the motion to dismiss for failure to state a claim for relief. However, it does not nullify the default judgment entered against Jero Enterprises. The defense of a lack of in personam jurisdiction, unlike subject matter jurisdiction, must be raised before the Court will rule on it. Since Jero Enterprises never filed a response to the complaint or otherwise plead or moved, the in personam jurisdictional defense is waived and this Court's default judgment is valid.